[Cite as *Lowe's Home Ctrs., L.L.C. v. Brooklyn City Schools Bd. of Edn.*, 2020-Ohio-464.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lowe's Home Centers, LLC, | : | |
| Appellant-Appellant, | : | |
| | : | No. 19AP-179 |
| v. | : | (BTA Case No. 2017-39) |
| Brooklyn City Schools Board of Education, et al. | : | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 11, 2020

**On brief:** *The Gibbs Firm, LPA,* and *Ryan J. Gibbs*, for appellant. **Argued:** *Geoffrey Byrne.*

**On brief:** *Brindza McIntyre & Seed LLP, Robert A. Brindza, Daniel McIntyre, David H. Seed*, and *David A. Rose,* for appellee Brooklyn City Schools Board of Education. **Argued:** *David H. Seed.*

APPEAL from the Board of Tax Appeals

BRUNNER, J.

{¶ 1} Appellant-appellant, Lowe's Home Centers, LLC, appeals from a decision of the Board of Tax Appeals ("BTA"), issued on February 26, 2019, modifying a decision of the Board of Revision ("BOR") and holding that the true value Lowe's parcel No. 433-15-004 on Northcliff Avenue in Brooklyn, Ohio was $12,020,000 on January 1, 2015. We find that whether the special purpose doctrine applies to a particular property involves factual questions; consequently, that issue lies within the discretion of the BTA and we defer to that exercise of discretion. We also find that, even after a 2012 amendment to the Ohio Revised Code, the requirement to value property for tax purposes "as if unencumbered" does not mean that an appraiser is to ignore existing encumbrances in favor of an

assumption that the subject property is vacant or distressed; instead, it means that an appraiser should impose adjustments to simulate market rent and occupancy instead of existing encumbrances. Because of these findings, we overrule all 18 of Lowe's assignments of error and affirm the decision of the BTA.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On March 31, 2016, Lowe's filed a complaint with the BOR alleging that the Cuyahoga County Auditor's value for the subject property[1] exceeded market value for the property and it alleged a true value of $7,850,070. (Ex. A, BOR Records, Lowe's Compl.) This would have reduced taxable value by $577,480. *Id.* Appellee-appellee, Brooklyn City Schools District, through the Board of Education ("BOE"), filed a counter complaint alleging that the auditor's value was correct at $9,500,000. (Ex. B, BOR Records, BOE Compl.) The BOE submitted a number of comparables and maps of the subject property tending to show its value in support of the auditor's assessment. (Ex. F, BOR Records, BOE Evidentiary Submission.) Lowe's submitted no evidence. (Ex. E, BOR Records, Dec. 5, 2016 Oral Hearing Journal Summary.) Ultimately, the BOR found that because Lowe's "did not provide evidence in support [of the] requested value," no change would be made to the auditor's valuation of $9,500,000. (Ex. E; Ex. G, BOR Records, Dec. 6, 2016 Decision Notice.)

{¶ 3}  On January 4, 2017, Lowe's appealed the BOR decision to the BTA, again alleging that the true market value of the subject property was $7,850,000. (Jan 1, 2017 Notice of BTA Appeal.) On November 13, 2017, an attorney examiner of the BTA heard the appeal. (Nov. 13, 2017 Hearing Tr.) In support of their arguments at the hearing, both Lowe's and the BOE submitted (among other exhibits) detailed written appraisals of the subject property. (Lowe's Ex. A, Racek Appraisal; BOE Ex. 6, Blosser Appraisal.) In addition, the two appraisers testified during the hearing about the value of the property.

{¶ 4}  The first to testify was Richard Racek, Jr. He explained that Lowe's hired him to perform an appraisal of the subject property for tax purposes as if transferred as a fee simple interest on January 1, 2015. (Hearing Tr. at 9-10.) He explained that an appraisal

---

[1] Although there does not seem to be any dispute in the record about which Lowe's location is implicated by this case, the subject property is referred to in the record by two different addresses: 7327 Northcliff Avenue, Brooklyn, Ohio 44144 and 4900 Northcliff Avenue, Cleveland, Ohio 44144. *Compare, e.g.*, Lowe's Ex. A, Racek Appraisal at cover *with* BOE Ex. 6, Blosser Appraisal at cover.

of a fee simple interest for tax purposes presumes a sale, which would mean that the owner-occupant is leaving and that the property would transfer unencumbered by a lease. *Id.* at 11-13. Racek's report observed that there are three traditional methods of valuation: the cost approach, the sales comparison approach, and the income capitalization approach. (Racek Appraisal at 27.) Before valuing the property, however, Racek considered the highest and best use of the property as a guide to determining how to value the property. *Id.* at 25-26. Despite recognizing that "the current utilization" of the building (by Lowe's as a single tenant[2] home-improvement store) is the "most profitable use of the subject property," Racek concluded that valuation for tax purposes required him to assume an unencumbered sale and that the specific improvements on the site would be "functionally obsolete for most second generation users." *Id.* at 26; Hearing Tr. at 11-12. Racek therefore noted that the building's value was subject to a "substantial amount of accrued depreciation which is mostly from functional and economic obsolescence." (Racek Appraisal at 26.)

{¶ 5} Racek testified that he did not evaluate the property on a replacement cost basis. *Id.* at 27; Hearing Tr. at 26. Instead, he evaluated it using a comparable sale approach and an income method by examining rental comparables in order to value it as income-producing property. (Racek Appraisal at 27.) Through adjusted comparisons of sales Racek considered to be comparable to the subject location, he obtained a rounded value of $6,770,000. *Id.* at 49-51. Racek then used the income capitalization approach. *Id.* at 52-56. He considered several adjusted comparable rental properties and then applied calculated deductions for vacancy, reserve, operating expenses, and management expenses, and then capitalized the result at what he characterized as an optimistic rate of capitalization (extrapolated from market yearly income for comparables in relation to their purchases prices). *Id.* By this income capitalization process, Racek obtained a value of $6,810,000. *Id.* at 56. Having considered the results produced by both methods, Racek ultimately appraised the subject property at $6,790,000. *Id.* at 57-58; Hearing Tr. at 52, 63.

---

[2] Lowe's takes issue with the BTA's use of "tenant" to describe Lowe's relationship to the subject property, accusing the BTA of being "so committed to the idea that the subject property should be valued as if encumbered by a lease to Lowe's, that it describes Lowe's as the 'current tenant,' despite having previously stated the store was owner-occupied." (Lowe's Brief at 31.) To head off similar criticism of our use of the phrase "tenant," we note that *Black's Law Dictionary* defines the term as "[s]omeone who holds or possesses lands or tenements by any kind of right or title." *Black's Law Dictionary* 1695 (10th Ed.2014). That definition encompasses both renters and fee simple absolute owners.

{¶ 6}    On cross-examination, Racek admitted that in 2012 he valued the property at $8,825,000 and that his estimation for market rent for the subject had declined 25 percent since his 2012 appraisal.  (Hearing Tr. at 81-83, 112; BOE Ex. 1, Racek 2012 Appraisal.)  He stood by these conclusions despite simultaneously admitting that the property market as a whole had improved from 2012 to 2015 after the Great Recession.  (Hearing Tr. at 81-83, 112.)  He also admitted that he used no comparables from the immediate area around the store and that a Sam's Club less than one mile away sold in 2013 for approximately $21,000,000 while another home improvement store paid over $10,000,000 for a vacant property on which to build near the subject property.  *Id.* at 75, 122, 126-27.

{¶ 7}    BOE's appraiser, Karen Blosser, was the final witness to testify in the hearing. *Id.* at 140.  Like Racek, Blosser agreed that the appraisal was of a fee simple interest for tax purposes as of January 1, 2015 and that fee simple ownership means absolute ownership unencumbered by any other estate or interest.[3]   *Id.* at 144.  However, in response to questioning on both direct examination and cross-examination, Blosser repeatedly stated that while "unencumbered" means one should not appraise the property with a defined lease in place, it is proper to consider, as an element of value, what the market rent would be for the property at market occupancy.  *Id.* at 144-45, 212-13, 228-30, 260-61, 268-69. To do otherwise, she opined, would be to essentially value the property in a vacant distressed state, which is not reflective of reality in this case, given that market occupancy in the region was 93 percent.  *Id.* at 198, 236, 265-66, 291-92, 298-99.

{¶ 8}    As a prelude to employing techniques for valuing the subject, Blosser also considered the highest and best use of the property.  (Blosser Appraisal at IV-1 to IV-2.) She concluded that the current use by the current tenant was the highest and best use.  *Id.* She then moved on to valuation and employed all three valuation techniques, cost, sales comparison, and income capitalization.  *Id.* at V to VII.  In the cost approach, she used comparable land sales to value the land of the subject as if it were vacant and unimproved, then added the calculated replacement cost of the existing improvements discounted in light of 16 years of accrued depreciation to obtain a value of $11,370,000.  *Id.* at VII-1 to VII-16.  By considering sales that Blosser considered to be comparable when appropriately

---

[3] Blosser qualified this by noting that unencumbered does not necessarily mean that the property is free of limitations imposed by governmental powers.  (Hearing Tr. at 144.)

adjusted, she estimated the value of the subject property at $12,180,000. *Id.* at VI-1 to VI-34. Blosser also performed a capitalization analysis taking into account occupancy, market rent, expenses, management fees, reserves, and an adjusted capitalization rate (based in part on published rates), arriving at a figure of $11,850,000. *Id.* at V-1 to V-9. Considering the results of all three approaches and giving the most weight to the capitalization and sales comparison approaches, Blosser appraised the subject property at $12,020,000. *Id.* at VIII-1.

{¶ 9} On February 26, 2019, the BTA issued its decision. It found the "special purpose" doctrine applied to this property, which permitted a valuation according to the property's use. (Feb. 26, 2019 BTA Decision at 2-4.) Consequently, it found Ms. Blosser's articulation of the highest and best use of the subject property–as currently used by Lowe's–was the most appropriate starting point for an appraisal. *Id.* at 4. Because of that, it found that, "Mr. Racek's opinion of value is not probative of the value of the subject property as of January 1, 2015." *Id.* at 4, 6. The BTA rejected Lowe's argument that a valuation of a property for tax purposes requires the appraiser to assume the property is vacant, noting that the Supreme Court of Ohio had previously rejected just such an argument. *Id.* at 4-5. Ultimately, the BTA found Blosser's appraisal to "best represent[] the true value in money of the subject property as it existed on [the] tax lien date." *Id.* at 7. Accordingly, it found a true value of $12,020,000, which yielded a taxable value of $4,207,000. *Id.* This represents an increase in taxable value of $882,000 above the auditor's assessed taxable value.

{¶ 10} Lowe's now appeals to this Court.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Lowe's raises eighteen assignments of error:

> [1.] The Board of Tax Appeals erred as a matter of law by adopting the Blosser appraisal value, which violated R.C. 5713.03's mandate of unencumbered valuation by adjusting unencumbered sale comparables upward for the fact that they were unencumbered at the time of sale.
>
> [2.] The Board of Tax Appeals abused its discretion and erred as a matter of law by applying appraisal industry authority over a statute enacted by the Ohio Legislature.

[3.] The Board of Tax Appeals erred by deviating from the plain meaning of a clear and unambiguous statute.

[4.] The Board of Tax Appeals['] decision violates the separation of powers implied by the Ohio Constitution in Articles II, III and IV and the United States Constitution.

[5.] The Board of Tax Appeals' decision and order violates the Ohio Constitution's mandate of uniform assessment.

[6.] The Board of Tax Appeals' decision and order violates the Equal Protection clauses under Article I, Section 2 of the Ohio State Constitution and the Fourteenth Amendment of the United States Constitution by applying the definition of fee simple, and interpreting §5713.03 of the Ohio Revised Code, in a manner that discriminates against certain taxpayers.

[7.] The Board of Tax Appeals erred by accepting the Blosser appraisal value, which admittedly violated R.C. 5713.03 by valuing the subject property as encumbered by a lease through a "leased at market rent" valuation.

[8.] The Board of Tax Appeals failed to adhere to its duty to find market value of an existing building by rejecting so called "second generation" sale and lease data.

[9.] The Board of Tax Appeals' adoption of the "special purpose" doctrine is a clear error of law as the record contains substantial evidence of the unencumbered value of properties similar in size to the subject and the subject was not "brand new on the tax lien date."

[10.] The Board of Tax Appeals abused its discretion by applying the "special purpose doctrine" when that determination is not supported by facts contained in the record, and such determination was against the manifest weight of the evidence.

[11.] The Board of Tax Appeals' adoption of the "special purpose" doctrine is a cynical abuse of discretion as it is used to avoid application of R.C. 5713.03's mandate that property be valued in the "fee simple interest, as if unencumbered."

[12.] The Board of Tax Appeals' claim that the subject property was leased as of the lien date is against the manifest weight of the evidence as the record definitively shows the subject property was owner-occupied at the time of sale.

[13.] The Board of Tax Appeals erred in its reliance on the Ohio Supreme Court's decision in *Harrah's Ohio Acquisition Co., LLC v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370 to find an as-encumbered value of the subject property.

[14.] The Board of Tax Appeals['] reliance on the fact that "Lowe's was still occupying the property as of the lien date" renders its determination an impermissible value-in-use, rather than value in exchange, or "true value," determination.

[15.] The Board of Tax Appeals erred as a matter of law by its deliberate adoption of an as-encumbered value of the subject property in contravention of the plain and unambiguous language of R.C. 5713.03, which requires that all property be valued "as if unencumbered."

[16.] The Board of Tax Appeals' reliance on the Blosser appraisal is against the manifest weight of the evidence as Blosser's inconsistency on whether property rights adjustments were made at all renders her report unreliable.

[17.] The Board of Tax Appeals['] finding that a hypothetical transfer of the subject property could occur both "as if unencumbered," as required by [R.C.] 5713.03, and "leased at market" as applied by Blosser is both legally and factually impossible.

[18.] The Board of Tax Appeals erred by adopting a "sale-leaseback" valuation for the subject property in direct contravention of the Ohio Supreme Court's holding in "State Farm" [*Columbus City School Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 100, 2017-Ohio-7578].

{¶ 12} App.R. 16(A)(7) requires "[*a*]*n argument* containing the contentions of the appellant *with respect to each assignment of error* presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.) Rather than argue assignments of error individually, however, Lowe's argues propositions of law, which it loosely (and sometimes duplicatively) associates with the individual assignments of error. (Lowe's Brief at 20, 27, 30, 33, 44, 53, 57.) This approach renders our usual assignment-of-error-focused review protocol required by the rule impracticable. Moreover, reading Lowe's brief, despite the large number of assignments of error (18), propositions of law (7), and issues presented for

review (6), it is apparent that there are essentially two dispositive questions to answer in this appeal: First, did the BTA err when it concluded that the "special purpose" doctrine applied? (Assignments of Error 8-11, 14.) Second, when the BTA accepted Blosser's appraisal as more appropriate than Racek's, did the BTA violate the statutory requirement that taxed real property be valued according to "the true value of the fee simple estate, as if unencumbered[?]" R.C. 5713.03. (Assignments of Error 1-7, 12-13, 15-18). We address these questions in order.

## III. DISCUSSION

### A. Standard

{¶ 13} In deciding an appeal from a BTA decision, we consider the record and evidence introduced in the proceedings below, and it is required that we "shall affirm" if the BTA's decision is "reasonable and lawful" but that we "shall reverse and vacate the decision or modify it" if it is "unreasonable or unlawful." R.C. 5717.04. Consequently, we review legal issues de novo but defer to the BTA's factual findings. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, ¶ 13. In other words, neither this Court nor any appellate court designated by R.C. 5717.04 constitutes a " 'super' board of tax appeals." *Hercules Galion Prods., Inc. v. Bowers*, 171 Ohio St. 176 (1960). "If the parties present competing appraisals at the BTA, '[t]he weighing of evidence and the assessment of credibility as regards both of the appraisals are the statutory job of the BTA,' and that body 'is vested with wide discretion' in carrying out that function." *Bd. of Edn. of the Westerville City Schools v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 28, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 9; *see also, e.g.*, *Wolf v. Cuyahoga Cty. Bd. of Revision*, 11 Ohio St.3d 205, 207 (1984).

### B. Applicability of the "Special Purpose" Doctrine

{¶ 14} The Supreme Court has explained:

> As a general matter, the Ohio Constitution provides, "Land and improvements thereon shall be taxed by uniform rule according to value * * *." Value in the context of ad valorem taxation of property is defined in terms of the *exchange* value rather than the current-use value. The general rule is as follows:

> In the last analysis the value or true value in money of any property is the amount for which that property would sell on the open market by a willing seller to a willing buyer. In essence, the value of property is the amount of money for which it may be exchanged, *i.e.*, the sales price.
>
> *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964).

*Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, ¶ 24. As expressed in the current version of R.C. 5713.03, the market value should be considered as a "fee simple estate, as if unencumbered."

{¶ 15} However, the high court in the *Rite Aid* decision went on to explain an exception to the general rule:

> But the rule of market-exchange valuation is not a rule without exception. * * *
>
> We have recognized a[] permissible example of use valuation [in the "special purpose" doctrine]. The lead case is *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 12 Ohio B. 347, 466 N.E.2d 909 (1984). In *Dinner Bell Meats*, two competing appraisals employed differing cost approaches based on their respective findings that the property was "special purpose" in nature. The court concluded that "in utilizing the 'cost approach' for a 'special purpose' building," the appraiser "simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility." *Id.* at 272. In holding that the approach was a proper cost approach and not a prohibited "current use" appraisal, the court acknowledged the general principle that " 'the special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique purpose for which it was built,' " a doctrine necessary to prevent "the owner of a distinctive, but yet highly useful, building" from "escap[ing] full property tax liability." *Id.*, quoting *Fed. Res. Bank of Minneapolis v. State*, 313 N.W.2d 619, 623 (Minn.1981).
>
> Later, in *Meijer, Inc. v. Montgomery Cty. Bd. of Revision*, 75 Ohio St.3d 181, 1996 Ohio 223, 661 N.E.2d 1056 (1996), we affirmed a BTA decision over arguments similar to those advanced and rejected in *Dinner Bell Meats*. In the context of resolving a battle of appraisals, the BTA in *Meijer, Inc.* declined to adopt the larger amount of obsolescence found by the owner's appraiser. The BTA found "nothing about the present

property [that was] obsolete or useless to the owner due to changing business conditions." *Meijer, Inc. v. Montgomery Cty. Bd. of Revision*, BTA Nos. 93-M-731, 93-M-732, and 93-M-733, 1995 WL 59106, *11 (Feb. 8, 1995). Indeed, "[t]he owner, by purchasing the land and constructing the building, evidences a market need for such a property. Therefore the costs of purchase and construction evidence that a prospective purchaser was willing to pay at least the costs of the property as newly constructed." *Id.* at *12; *see also Oakwood Club v. Cuyahoga Cty. Bd. of Revision*, 70 Ohio St.3d 241, 1994 Ohio 347, 638 N.E.2d 547 (1994) (invoking *Dinner Bell Meats* to overrule the property owner's contention that the county's appraiser had performed a value-in-use analysis for its golf-course facility).

In both *Dinner Bell Meats* and *Oakwood Club*, we disclaimed that use valuation was being performed. * * * But in 2009, we acknowledged that those earlier cases did embody a type of use valuation. *Meijer Stores*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, at ¶ 24 ("we have also held that the constitutional prohibition does not bar consideration of current-use value in the context of the 'special-purpose property' doctrine").

*Rite Aid* at ¶ 28-31.

{¶ 16} Consistent with an in-use valuation and the special purpose doctrine, Blosser determined that the highest and best use of the subject property was the current use, as a home improvement store by Lowe's. (Blosser Appraisal at IV-1 to IV-2; Hearing Tr. at 234-36.) Racek also recognized that the current use of the building was the "most profitable use of the subject property," but he concluded that valuation for tax purposes required him to assume an unencumbered sale and that the specific improvements on the site would be "functionally obsolete for most second generation users." (Racek Appraisal at 26; Hearing Tr. at 11-12, 24-25). In short, both experts agreed that the subject property was of such a size and design that it was most valuable when used in the way it was being used–as a Lowe's big box store. But these experts diverged in their opinions thereafter because Blosser adopted that philosophy in selecting and adjusting comparables while Racek rejected it.

{¶ 17} The Supreme Court has confronted a similar situation:

The testimony of the appraisers, the expository passages of their appraisal reports, and the values they determined for the

> property reflect a fundamental dispute. [Meijer's appraiser] looked at the big-box store as adding only modest market value because the structure would not be easily adaptable to the needs of a potential buyer, a factor that he opined would impair the property's marketability. According to [Meijer's appraiser], most potential buyers would be hard-pressed to utilize such a large space for their own business and would probably have to significantly renovate or even tear down the existing structure in order to use the property. [Meijer's appraiser] called this limitation on the property's marketability "external obsolescence" and looked at second-generation purchasers and tenants to determine value by the sales-comparison and income-capitalization approaches.
>
> By contrast, [the school board's appraiser] looked at Meijer's own use as the touchstone for determining market rent and comparable sales. When asked, in the context of his income approach, who would lease the space, [The school board's appraiser] answered: "Meijer." Accordingly, "market rent" for [the school board's appraiser] consisted in part as what rent Meijer itself would be willing to pay to an owner other than itself. Comparable sales in [the school board's appraiser]'s view included sales by developers who built big-box retail facilities on a build-to-suit basis and then sold them to third parties.

*Meijer Stores L.P. v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, ¶ 7-8. In the 2009 *Meijer* case, the Supreme Court affirmed a decision of the BTA adopting the school board's appraisal, finding that the "special purpose" doctrine set forth in *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270 (1984), and a 1996 decision, *Meijer, Inc. v. Montgomery Cty. Bd. of Revision*, 75 Ohio St.3d 181 (1996), applied to permit the value-in-use appraisal. *Meijer,* 2009-Ohio-3479, at ¶ 21-28.

{¶ 18} The Supreme Court also encountered a somewhat similar situation in *Target Corp. v. Greene Cty. Bd. of Revision*, 122 Ohio St.3d 142, 2009-Ohio-2492. In that case, Target presented an argument similar to the one Lowe's seeks to use now, that the big box store design (over 100,000 sq. ft.) has a high degree of built-in obsolescence because such structures are really only maximally useful to the first generation user for whom they are built. *Id.* at ¶ 4-5. As a result of this conclusion, the Target appraisers used comparables that had been sold or leased to second-generation users. *Id.* at ¶ 6. Based on that rationale, they reached a much lower valuation than that proposed by the auditor. *Id.* at ¶ 2. As the county did not present any competing appraisal or evidence, the BTA adopted the valuation

proposed by Target and the Supreme Court affirmed. *Id.* at ¶ 9, 17-18. In so doing, however, the Supreme Court offered an enlightening discussion about why it would not apply the "special purpose" doctrine:

> [T]he county's reliance on *Meijer* implicates the special-purpose-property doctrine that we articulated in *Dinner Bell Meats*. In that case, two competing appraisals employed differing cost approaches based on their respective findings that the property was "special purpose" in nature. *Id.* at 271, 12 OBR 347, 466 N.E.2d 909. We concluded that "in utilizing the 'cost approach' for a 'special purpose' building," the appraiser "simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility." *Id.* at 272. In so holding, we acknowledged the general principle that "'the special purpose exception is applied to a building in good condition being used currently and for the foreseeable future for the unique purpose for which it was built,'" a doctrine necessary to prevent "the owner of a distinctive, but yet highly useful, building" from "escap[ing] full property tax liability." *Id.*, quoting *Fed. Res. Bank of Minneapolis v. State* (Minn.1981), 313 N.W.2d 619, 623.
>
> While one may speculate on whether, for purposes of tax valuation, the Target store at issue might validly be considered as special-purpose property, we have never in the past disturbed a determination of value by the BTA based on such speculation. To the contrary, each of the decisions in which we have alluded to the special-purpose doctrine involves an appraisal offered in support of the value that was ultimately determined and our affirmance of the BTA's reliance on that evidence. *Meijer*, 75 Ohio St.3d 181, 1996 Ohio 223, 661 N.E.2d 1056; *Dinner Bell Meats*, 12 Ohio St.3d 270, 12 OBR 347, 466 N.E.2d 909; *Oakwood Club v. Cuyahoga Cty. Bd. of Revision* (1994), 70 Ohio St.3d 241, 1994 Ohio 347, 638 N.E.2d 547. Far from furnishing precedent for second-guessing the BTA, to date, our case law concerning special-purpose property has shown deference to the factfinding expertise of that tribunal. In the present case, as already discussed, the county presented no evidence in support of its theory that the Target store might qualify as special-purpose property.

*Target* at ¶ 16-17.

{¶ 19} The "special purpose" doctrine is a legal exception to a legal rule about how to value property for tax purposes. But, having reviewed the relevant caselaw, it is clear that whether a particular property has the characteristics to qualify for the "special

purpose" doctrine is a question of fact to be resolved by the BTA. Here, the BTA found the exception to apply based on the size and type of the Lowe's property involved, the fact that it was still in profitable use by its creator and would remain in such use for the foreseeable future. (Feb. 26, 2019 BTA Decision at 2-4.) While we understand that Racek and Lowe's dispute that conclusion, we discern no basis for concluding that the BTA abused its discretion in reaching it.[4]

{¶ 20} We overrule Lowe's eighth, ninth, tenth, eleventh, and fourteenth assignments of error.

### C. Whether the BTA Erred in Accepting the Blosser Valuation which Incorporated Market Rent as a Component

{¶ 21} For many years, it has been the law in Ohio that, "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." *Alliance Towers v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16 (1988), paragraph one of the syllabus. When that rule was only established by caselaw (not statute), some decisions of the Supreme Court also found an exception: in the case of a recent sale of the subject property, the sale price could be taken as conclusive of value and did not need to be adjusted to take account of existing encumbrances. *See, e.g., Cummins Prop. Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 24; *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, ¶ 5-16. However, in 2012, House Bill No. 487 effectively inserted statutory language to require that the auditor assess the "true value of the fee simple estate, as if unencumbered." 2012 Am.Sub.H.B. No. 487.[5] With that addition to the statutory text, it became clear that, without exception, the estate to be valued when considering the value of a subject property is the fee simple estate, as if unencumbered. *See Lowe's Home Ctr., Inc. v. Washington Cty. Bd. of Revision*, 154

---

[4] It is unnecessary to address it in the body of this decision, but we note that Lowe's also advances a policy argument suggesting that the BTA's designation of a "big box" store like Lowe's as within the special purpose doctrine is a slippery slope and that few such properties would not be within the special purpose doctrine. (Lowe's Brief at 52.) But in so arguing, Lowe's fails to consider the converse of its argument and the point of the special purpose doctrine–to avoid underassessing structures that have great value to the original builder and very little value to successor users. *Meijer* at ¶ 25. So, to flip the policy argument on its head, if such structures were not within the special purpose doctrine, then business could build "big box" style structures unique to their preferred floor plans, which have great profit value to the original owner but relatively little value to future users or posterity, and yet avoid being adequately taxed for this sub-optimal economic behavior. If businesses such as Lowe's built with future users and the communities they inhabit as part of their business and consideration, the special purpose doctrine would cease to apply.

[5] Archived online at 2011 Ohio HB 487.

Ohio St.3d 463, 2018-Ohio-1974, ¶ 19 (stating, "it is plain that a lease is an encumbrance and that R.C. 5713.03's directive to value the realty 'as if unencumbered' means to value the realty as if it were free of encumbrances such as leases").

{¶ 22} But Lowe's interprets this to mean that not only should the subject property not be valued in light of the terms of an existing actual lease (which does not exist in this case because the subject property is owner-occupied), it should also not be valued in consideration of market occupancy and what rent it would fetch in the market. In essence, Lowe's would value an owner-occupied property like the subject in this case as if it were vacant on the tax lien date, rather than occupied at market occupancy and rented at market rent. The Supreme Court has rejected this view:

> Although the subject property is owner-occupied, [the school board's appraiser] appraised it as if it were generating income under a hypothetical lease, under what he believes would be current market rates. Finding that owner-occupied property cannot be valued this way, the BTA declined to consider [the school board]'s appraisal. The BTA found that [the school board's appraiser]'s methodology represented a leased-fee valuation that " 'taint[ed] the validity of the entire report.' " 2016 Ohio Tax LEXIS 585, 2016 WL 2907629 at *6, quoting *JGT Ents., Inc.*, 2002 Ohio Tax LEXIS 393, at *7-8. Continuing, the BTA stated that "by performing a leased fee appraisal analysis of the owner occupied subject, [the school board's appraiser] has overstated the total value of the subject property; accordingly, we will not consider [the school board's appraiser]'s conclusions to value under his leased fee analysis." *Id.*
>
> The BTA's refusal to consider [the school board]'s appraisal was legal error. We addressed the propriety of appraising owner-occupied property as if it were leased in *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 21-23. After recognizing that a property owner may be able to realize the value of its property by encumbering it with a lease, we concluded that an appraiser may take that possibility into account when valuing it. *Id.* at ¶ 23; *see also Saratoga Harness Racing, Inc. v. Williams*, 697 N.E.2d 164, 166-167, 91 N.Y.2d 639, 674 N.Y.S.2d 263 (1998) (approving the same approach in the valuation of a horse-racing facility). Appraising property in this way is consistent with R.C. 5713.03's directive to determine "the true value of the fee simple estate, as if unencumbered," so long as the appraisal assumes a lease that reflects the relevant

real-estate market. *See* Appraisal Institute, *The Appraisal of Real Estate* 441 (14th Ed.2013) ("When the fee simple interest is valued, the presumption is that the property is available to be leased at market rates"); Ohio Adm.Code 5703-25-07(D)(2) (authorizing use of income-capitalization approach in valuing real estate). Although the BTA ultimately may disagree with [the school board's appraiser]'s factual assumptions about the lease terms, his methodology was not defective as a matter of law, and the BTA should have considered it.

*Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, ¶ 26-27. In other words, "as if unencumbered," means that if the subject property is encumbered, the appraiser adjusts for the effects of those encumbrances. It does not mean, however, that the appraiser must assume that the property is vacant or ignore the fact that the property could be leased at a market rent. Thus, such adjustments are adjustments to account for market rent and occupancy levels, not adjustments to simulate vacancy.

{¶ 23} We also note that the *Harrah's* decision has been repeatedly relied on by the BTA to reject arguments identical to what Lowe's now asserts, and none of those cases have been reversed. For example, the BTA has remarked, "[t]o the extent that the property owner argued that any consideration of the income that could be generated from the subject property through a market lease is contrary to law, we disagree. The Supreme Court specifically rejected such argument in *Harrah's*." *Lowe's Home Ctr., Inc. v. Washington Cty. Bd. of Revision*, BTA No. 2014-4606, 2019 Ohio Tax LEXIS 2125, *13 (Sept. 10, 2019).

{¶ 24} On another occasion, the BTA stated "[w]e first address Lowe's argument that R.C. 5713.03 that requires we accept its view that real property in Ohio must be valued as if it were vacant on tax lien date. This board confronted a similar argument * * * [and] rejected the argument, citing to the Supreme Court's recent decision in *Harrah's* * * * where it found no error in an appraiser valuing an owner-occupied property as it were generating market rate income under a hypothetical lease." *Lowe's Home Ctrs., LLC v. Lorain Cty. Bd. of Revision*, BTA Case No. 2017-1023, 2019 Ohio Tax LEXIS 1900, *4 (Aug. 12, 2019); *see also Lowe's Home Ctrs., LLC v. Cuyahoga Cty. Bd. of Revision*, BTA Case No. 2017-39, 2019 Ohio Tax LEXIS 342, *11-13 (Feb. 26, 2019) ("Under this valuation standard, Lowe's argues, a property must be assumed to be vacant on tax lien date[.] * * * The Supreme Court specifically rejected such argument in *Harrah's*.").

{¶ 25} For the same reasons, the BTA has also rejected claims that the proper comparables are those properties which are sold as vacant. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Case No. 2017-278, 2019 Ohio Tax LEXIS 411, *4 (Mar. 11, 2019) (noting that "we fundamentally disagree with the appraisers' selection of mostly vacant, comparable properties under the sales comparison approach. A review of the appraisers' testimony highlights a belief that appraising the fee-simple interest requires the use of vacant properties").

{¶ 26} Lowe's also seeks to discredit Blosser's comparables, arguing that adjustments to encumbered comparables was necessary to "remove the effect of the encumbrance." (Lowe's Brief at 36-38.) But the Supreme Court has held that R.C. 5713.03 does not prescribe standards to be applied in a comparable-sales analysis. *Lowe's*, 2018-Ohio-1974, at ¶ 20. Second, although in determining the value of an unencumbered parcel, lease-encumbered comparable parcels should generally be adjusted, the Supreme Court has also made clear on several occasions that such adjustments to comparables may be unnecessary if the special purpose doctrine applies. *Rite Aid*, 2016-Ohio-371, at ¶ 20-31; *Lowe's Home Ctrs. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, ¶ 25; *Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision*, 145 Ohio St.3d 244, 2015-Ohio-4836, ¶ 39-40. We have already determined that the BTA did not abuse its discretion in finding that the special purpose doctrine applies here. *See supra* at ¶ 14-20.

{¶ 27} Relying on the *Harrah's* decision, we overrule Lowe's first, second, third, fourth, fifth, sixth, seventh, twelfth, thirteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments of error.

## IV. CONCLUSION

{¶ 28} Whether the special purpose doctrine applies to a particular property involves factual questions about the nature of the property and its owner and lies within the discretion of the BTA. We find no basis to reverse the BTA's discretionary determination to apply the special purpose doctrine in this case and accordingly overrule Lowe's eighth, ninth, tenth, eleventh, and fourteenth assignments of error. For over 30 years it has been the law in Ohio that for real property tax purposes, a property is to be valued as a fee simple estate as if it were unencumbered. It has also been understood for some years that "as if unencumbered" does not mean that one is to assume the subject property is vacant or distressed but, instead, means an adjustment in value to simulate market rent and

occupancy is appropriate.  The "unencumbered" language added to the Ohio Revised Code in 2012 implied some changes to the precedent previously set by caselaw but not to such principle.  We, therefore, overrule Lowe's first, second, third, fourth, fifth, sixth, seventh, twelfth, thirteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments of error, and affirm the judgment of the Board of Tax Appeals.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.