[Cite as *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2020-Ohio-1319.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| RANCHO CINCINNATI RIVERS, LLC, | : | |
| Appellant, | : | CASE NO. CA2019-07-075 |
| | : | O P I N I O N |
| - vs - | | 4/6/2020 |
| | : | |
| WARREN COUNTY BOARD OF REVISION, et al., | : | |
| | : | |
| Appellees. | : | |

ADMINISTRATIVE APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV090441

The Gibbs Firm, LPA, Ryan J. Gibbs, 2355 Auburn Avenue, Cincinnati, Ohio 45219, for appellant

David P. Fornshell, Warren County Prosecuting Attorney, Christopher A. Watkins, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Board of Revision and Warren County Auditor

David C. DiMuzio, Inc., David C. DiMuzio, Matthew C. DiMuzio, 810 Sycamore Street, Sixth Floor, Cincinnati, Ohio 45202, for appellee, Kings Local School District Board of Education

**RINGLAND, J.**

{¶ 1} Appellant, Rancho Cincinnati Rivers, LLC ("Rancho"), appeals from a decision of the Warren County Court of Common Pleas upholding a decision of the Warren County Board of Revision ("BOR") declining to decrease the value of certain real property

located at 575 Corwin Nixon Blvd., South Lebanon, Ohio ("Property").

{¶ 2}    The Property consists of two parcels including a 141,100 square foot "big box" structure built in 2008, which is currently leased by Lowe's Companies, LLC ("Lowe's").  For the 2015 tax year, the Warren County Auditor valued the property at $8,500,000.

{¶ 3}    Rancho filed a complaint with the BOR seeking a reduction in value for the Property as of January 1, 2016.  Kings Local School District Board of Education ("Kings") contested Rancho's complaint and asked the BOR to maintain the appraised value.  In support of the reduction, Rancho presented the report and testimony of its appraiser, Richard Racek.  The BOR rejected Racek's appraisal and retained the Auditor's valuation of $8,500,000.  Rancho appealed to the Warren County Court of Common Pleas and an evidentiary hearing was held before a magistrate.

{¶ 4}    At the hearing before the magistrate, Rancho presented Racek's report and testimony while Kings presented the report and testimony of its appraiser, James Burt.  The appraisers differ in their fundamental views of how to appraise property in its "fee simple estate, as if unencumbered" as required by R.C. 5713.03.  Racek appraised the property under the theory that "fee simple unencumbered" requires that a property be vacant on the tax lien date and assumes a hypothetical sale of the property without a tenant in place.

{¶ 5}    Burt, on the other hand, appraised the Property as if it could be purchased with a lease in place at market rate.  Rather than a purchaser acquiring a possessory interest in the property, the purchaser could exchange such right for the income generated from leasing the property.  Burt therefore utilized comparable sales sold with leases in place and would enter adjustments for any non-market terms.

{¶ 6}    Racek performed two appraisals on the Property.  For the sales comparison approach, Racek evaluated 11 transactions involving big box stores throughout Ohio.  Five of those transactions involved stores sold or listed for sale between 2013 and 2016 without

an existing lease. Six of the transactions involved stores sold between 2014 and 2015 that had existing leases. For the properties with an existing lease, Racek adjusted the sales prices downward to reflect the absence of a lease. Again, this downward adjustment was based on Racek's belief that in order to find a comparable, relevant sale for appraisal purposes, there can be no lease in place at the tax lien date. Utilizing this approach, Racek concluded the Property had a fair market value of $5,660,000 as of January 1, 2016.

{¶ 7} For the income approach, Racek evaluated 14 properties, seven of which had existing leases and seven of which did not. Racek determined a gross potential income on the Property of $565,600 and then subtracted the cost of vacancy and credit loss, and management and administrative reserves, to find the net operating income as $450,500, capitalized at 7.5%. Racek determined the value as $6,000,000. After reconciling these two approaches, Racek concluded that the value of the Property was $5,800,000.

{¶ 8} To the contrary, Burt performed three different appraisals utilizing a cost approach, a sales comparison approach, and an income approach. For the cost approach, Burt examined four sales of vacant land and added the replacement cost of the building for a total cost approach value of $9,010.000.

{¶ 9} For the sales comparison approach, Burt evaluated four transactions between 2013 and 2015 involving big box stores, three of which were occupied by a Lowe's and sold with existing leases. The fourth sale involved a big box structure occupied by a Dillard's that had been split into two units and extensively remodeled. Burt reviewed but did not adjust for the leases involved in these sales because, according to him, the terms of the leases were market rate and no adjustment was required. Burt did, however, perform location adjustments to the comparable properties based upon increased rent garnered from the leases. Considering these sales, Burt concluded the Property had a fair market value of $8,480,000.

{¶ 10} For the income approach, Burt evaluated four properties. Burt estimated the Property's net operating income to be $674,452 with a 7.87% capitalization rate. Burt determined under this approach that the Property had a fair market value of $8,570,000.

{¶ 11} Burt explained that his sales comparison approach should be utilized to provide the most accurate fair market value for the Property as $8,480,000.

{¶ 12} Following the evidentiary hearing, the magistrate issued its decision finding in favor of Rancho. In so doing, the magistrate found that Burt's valuations could not be relied upon because Burt failed to adjust for the leases at issue as "fee simple estate, as if unencumbered" as required by R.C. 5713.03. As such, the magistrate concluded it was "constrained" to reverse the decision of the BOR and adopted Rancho's proposed valuation of $5,800,000.

{¶ 13} Kings and Warren County timely objected to the magistrate's decision. Following review, the common pleas court sustained the objections. In so doing, the court found the magistrate placed an improper burden on Kings to prove its valuation without first determining whether Rancho was entitled to a decrease in valuation as required by law. The common pleas court then considered the record in its entirety and determined Racek's appraisal was competent, probative evidence, but found that the Burt appraisal provided the *most* competent and probative evidence of the Property. Therefore, the court set the Property's value as $8,480,000. Rancho now appeals, raising three assignments of error for review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE COURT ERRED BY DETERMINING THAT THE DECISION OF MAGISTRATE ANDREW HASSELBACH DID NOT FIND THE RACEK APPRAISAL TO BE COMPETENT AND PROBATIVE EVIDENCE OF VALUE.

{¶ 16} In its first assignment of error, Rancho alleges the common pleas court erred

- 4 -

by finding that the Racek appraisal was not competent and probative evidence of value. Rancho's argument is without merit.

{¶ 17} Under R.C. 5717.05, an appeal from a county board of revision may be taken directly to the court of common pleas. Determining the true value of property on appeal from a board-of-revision decision is a question of fact for the common pleas court after performing an independent investigation and reevaluation of the board's value determination. *SSN II, Ltd. v. Warren Cty. Bd. of Revision*, 12th Dist. Warren No. CA2012-04-037, 2013-Ohio-1112, ¶ 10. Nevertheless, a taxpayer has the initial burden and obligation to prove the right to a reduction. *Eastbrook Farms, Inc. v. Warren Cty. Bd. of Revision*, 194 Ohio App.3d 193, 2011-Ohio-2103, ¶ 18 (12th Dist.).

{¶ 18} Rancho suggests that the common pleas court disregarded Racek's appraisal as not constituting competent and probative evidence. However, Rancho's argument is rebutted by the record, as the court clearly considered that evidence and, in fact, found Racek's appraisal to meet Rancho's initial burden of proof. As noted in the common pleas court's final judgment entry:

> Upon review of Racek's appraisal report, as well as his testimony explaining that report, the Court finds Rancho produced competent, credible, and probative evidence supporting its desired reduction in valuation. The parties stipulated that Racek was an expert in his field and qualified to give an appraisal in this case. His report was clear and provided appropriate explanation of why he came to his valuation of the Property. Thus, Rancho has met its initial burden to present competent and credible evidence warranting a reduction in valuation. Now the burden shifts to those opposing this reduction in valuation to present evidence to the contrary. As Kings and Warren County chose to present their own expert appraiser, this Court must determine the credibility of the competing experts and weigh the evidence before it to determine which side presents the most competent, credible, and probative evidence of the valuation.

{¶ 19} Thus, contrary to Rancho's suggestion, the common pleas court did find

Racek's appraisal was competent and probative. However, the common pleas court reviewed the additional evidence presented by Kings and Warren County and found that their evidence was more credible. It is well-established that a "common pleas court has broad discretion to weigh the evidence and judge the credibility of witnesses." *Amsdell v. Cuyahoga Cty. Bd. of Revision*, 69 Ohio St.3d 572, 574 (1994). Once a common pleas court makes its determination, it will not be disturbed on appeal absent an abuse of discretion. *Black v. Cuyahoga Cty. Bd. of Revision*, 16 Ohio St.3d 11, 14 (1985); *Eastbrook*, 2011-Ohio-2103 at ¶ 17.

{¶ 20} In this case, the common pleas court simply found Burt's appraisal to be more competent and probative than Racek's appraisal. As noted in the court's final judgment entry

> Based on a thorough review of the record, the relevant law, and the arguments of the parties, the Court finds that Rancho satisfied its initial burden of presenting competent evidence entitling it to a reduction in valuation as of the tax lien date, January 1, 2016, Kings and Warren County have presented the *most* competent and probative evidence of the Property's decision.

(Emphasis sic.) Thus, Rancho's argument that the common pleas court did not find Racek's appraisal to constitute competent and credible evidence is rebutted by the record. Furthermore, it is clear the court appropriately weighed the competing reports and testimonies and entered judgment accordingly. The common pleas court, as trier of fact, was in the best position to weigh the conflicting evidence. Therefore, Rancho's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE COURT ERRED BY OVERRULING THE FINDINGS OF MAGISTRATE ANDREW HASSELBACH, WHO CORRECTLY DETERMINED THE BURT APPRAISAL DID NOT VALUE THE SUBJECT PROPERTY'S MARKET VALUE IN THE FEE SIMPLE

INTEREST, AS IF ENCUMBERED.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE COURT'S DECISION VIOLATES THE OHIO CONSTITUTION'S MANDATE OF UNIFORM ASSESSMENT UNDER ARTICLE XII, SECTION 2 OF THE OHIO CONSTITUTION AND THE EQUAL PROTECTION CLAUSES UNDER ARTICLE I, SECTION 2 OF THE OHIO STATE CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY APPLYING THE DEFINITION OF FEE SIMPLE, AND INTERPRETING §5713.03 OF THE OHIO REVISED CODE, IN A MANNER THAT DISCRIMINATES AGAINST CERTAIN TAXPAYERS.

{¶ 25} Rancho's second and third assignments of error address the same concept. As noted earlier, the two appraisers have a fundamental disagreement of how to appraise property in its "fee simple estate, as if unencumbered" as required by R.C. 5713.03. Racek ascribes to the theory that an estate "fee simple unencumbered" requires that a property be vacant on the tax lien date and assumes a hypothetical sale of the property without a tenant in place. Burt does not ascribe to this theory because the theory assumes a hypothetical condition that undervalues properties, such as this one, where the property is operated as the highest and best use.

{¶ 26} Rancho's second assignment of error argues the common pleas court erred by accepting Burt's valuation, alleging he adopted a "leased at market" valuation in violation of R.C. 5713.03. In its third assignment of error, Rancho argues the court's interpretation of R.C. 5713.03 discriminates against it and is punitive. We find Rancho's arguments are without merit.

{¶ 27} It has long been the law in Ohio that, "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered." *Alliance Towers v. Stark Cty. Bd. of Revision,* 37 Ohio St.3d 16 (1988), paragraph one of the syllabus. When that rule

- 7 -

was only established by caselaw, not statute, some decisions of the Supreme Court also found an exception: in the case of a recent sale of the subject property, the sale price could be taken as conclusive of value and did not need to be adjusted to take account of existing encumbrances. *See, e.g., Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 19-26; *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, ¶ 5-16.

{¶ 28} In 2012, the legislature adopted statutory language in R.C. 5713.03 that required the auditor to assess the "true value of the fee simple estate, as if unencumbered." With that addition to the statutory text, it became clear that, without exception, the estate to be valued when considering the value of a subject property is the fee simple estate, as if unencumbered. *See Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, ¶ 19 (stating, "it is plain that a lease is an encumbrance and that R.C. 5713.03's directive to value the realty 'as if unencumbered' means to value the realty as if it were free of encumbrances such as leases").

{¶ 29} Rancho interprets R.C. 5713.03 to mean that an occupied property should be valued as if it were vacant and available for sale or rent to a future hypothetical user, rather than its current use, which is a functioning, occupied store. Stated another way, Rancho and its appraiser would value an occupied property, like the property in this case, as if it were vacant on the tax lien date, rather than occupied and rented at market rent. The Supreme Court has rejected this interpretation:

> Although the subject property is owner-occupied, [the school board's appraiser] appraised it as if it were generating income under a hypothetical lease, under what he believes would be current market rates. Finding that owner-occupied property cannot be valued this way, the BTA declined to consider [the school board]'s appraisal. The BTA found that [the school board's appraiser]'s methodology represented a leased-fee valuation that "'taint[ed] the validity of the entire report.'" (Citation omitted). Continuing, the BTA stated that "by

performing a leased fee appraisal analysis of the owner occupied subject, [the school board's appraiser] has overstated the total value of the subject property; accordingly, we will not consider [the school board's appraiser]'s conclusions to value under his leased fee analysis." Id.

The BTA's refusal to consider [the school board]'s appraisal was legal error. We addressed the propriety of appraising owner-occupied property as if it were leased in *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 21-23. After recognizing that a property owner may be able to realize the value of its property by encumbering it with a lease, we concluded that an appraiser may take that possibility into account when valuing it. *Id.* at ¶ 23; see also *Saratoga Harness Racing, Inc. v. Williams*, 697 N.E.2d 164, 166-167, 91 N.Y.2d 639, 674 N.Y.S.2d 263 (1998) (approving the same approach in the valuation of a horse-racing facility). Appraising property in this way is consistent with R.C. 5713.03's directive to determine "the true value of the fee simple estate, as if unencumbered," so long as the appraisal assumes a lease that reflects the relevant real-estate market. *See* Appraisal Institute, *The Appraisal of Real Estate* 441 (14th Ed.2013) ("When the fee simple interest is valued, the presumption is that the property is available to be leased at market rates"); Ohio Adm.Code 5703-25-07(D)(2) (authorizing use of income-capitalization approach in valuing real estate). Although the BTA ultimately may disagree with [the school board's appraiser]'s factual assumptions about the lease terms, his methodology was not defective as a matter of law, and the BTA should have considered it.

*Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, ¶ 26-27. In other words, "as if unencumbered," means that if the subject property is encumbered, the appraiser adjusts for the effects of those encumbrances. It does not mean, however, that the appraiser must assume that the property is vacant or ignore the fact that the property is leased at a market rate.

{¶ 30} Similar arguments have been rejected by the Tenth District Court of Appeals in *Lowe's Home Ctrs., L.L.C. v. Brooklyn City Schools Bd. of Edn.*, 10th Dist. Franklin No. 19AP-179, 2020-Ohio-464. In that decision, the Tenth District also noted that the Ohio Supreme Court's decision in *Harrah's* had been repeatedly relied on by the Board of Tax

Appeals ("BTA") to reject arguments identical arguments, none of which have been reversed. For example, in *Lowe's Home Ctrs., L.L.C. v. Lorain Cty. Bd. of Revision*, BTA No. 2017-T-1023, 2019 Ohio Tax LEXIS 1900, (Aug. 12, 2019), the BTA stated "[w]e first address Lowe's argument that R.C. 5713.03 that *requires* that we accept its view that real property in Ohio must be valued as if it were vacant on tax lien date. This board confronted a similar argument * * * [and] rejected the argument, citing to the Supreme Court's recent decision in [*Harrah's*] * * * where it found no error in an appraiser valuing an owner-occupied property as it were generating market rate income under a hypothetical lease." (Emphasis sic.) *Id.* at *4; see also *Lowe's Home Ctrs., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2017-T-39, 2019 Ohio Tax LEXIS 342, *11-13 (Feb. 26, 2019) ("Under this valuation standard, Lowe's argues, a property must be assumed to be vacant on tax lien date[.] * * * The Supreme Court specifically rejected such argument in [*Harrah's*]."); *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, BTA No. 2014-T-4606, 2019 Ohio Tax LEXIS 2125, *13 (Sept. 10, 2019).

{¶ 31} As a result, and in accordance with the Ohio Supreme Court's decision in *Harrah's*, we find Rancho's arguments are without merit. We further agree with the conclusion set forth by the Tenth District in its recent *Lowe's* decision:

> For over 30 years it has been the law in Ohio that for real property tax purposes, a property is to be valued as a fee simple estate as if it were unencumbered. It has also been understood for some years that "as if unencumbered" does not mean that one is to assume the subject property is vacant or distressed but, instead, means an adjustment in value to simulate market rent and occupancy is appropriate. The "unencumbered" language added to the Ohio Revised Code in 2012 implied some changes to the precedent previously set by caselaw but not to such principle.

*Lowe's Home Ctrs., L.L.C.*, 2020-Ohio-464 at ¶ 28. The common pleas court did not err by accepting Burt's appraisal, nor did it deprive Rancho of equal protection under the law or

otherwise discriminate against it by applying the law. Rancho's second and third assignments of error are overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.