RATNER, TRUSTEE, ET AL., APPELLEES, *v.* STARK COUNTY BOARD OF REVISION ET AL., APPELLANTS.

[Cite as Ratner *v.* Stark Cty. Bd. of Revision (1988), 35 Ohio St. 3d 26.]

(No. 86-1126—Decided January 13, 1988.)

Fred Siegel Co., L.P.A., Fred Siegel, Karen Bauernschmidt and Wayne E. Petkovic, for appellees.

Robert D. Horowitz, prosecuting attorney, and Gary D. Cerrone, for appellants.

Teaford, Rich, Belskis, Coffman & Wheeler and Jeffrey A. Rich, urging reversal for amicus curiae, Columbus Board of Education.

Per Curiam. In Ratner I, supra, we held the following:

"Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. (Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd. [1984], 9 Ohio St. 3d 218, 219, construed.)"

We made this ruling after reviewing the pertinent decisions which discuss the adoption of the sale price as the true value in money of real property for tax purposes. In the landmark decision of State, ex rel. Park Investment Co., v. Bd. of Tax Appeals (1964), 175 Ohio St. 410, 412, 25 O.O. 2d 432, 434, 195 N.E. 2d 908, 910, this court stated:

"The best method of determining value, when such information is available, is an actual sale of such property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so. Paragraph two of the syllabus in In re Estate of Sears, 172 Ohio St., 443, 178 N.E. (2d), 240. This, without question, will usually determine the monetary value of the property."

Paragraph two of the syllabus in In re Estate of Sears (1961), 172 Ohio St. 443, 17 O.O. 2d 417, 178 N.E. 2d 240, is as follows:

"Market value is the fair and reasonable cash price which can be obtained in the open market, not at a forced sale or under peculiar circumstances but at voluntary sale between persons who are not under any compulsion or pressure of circumstances and who are free to act; or in other words, between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so." (Emphasis supplied.)

While examining the Park Investment decision, Justice Paul W. Brown, in Bd. of Revision v. One Euclid Co. (1968), 16 Ohio St. 2d 43, 46, 45 O.O. 2d 325, 327, 242 N.E. 2d 582, 584, wrote:

" * * * Judge Matthias, in Park, declared that in arriving at the value of an individual parcel of real estate the price paid in an arms-length sale between a willing seller and a willing buyer is usually the best evidence of market value. With this we agree. We hasten to add that the aggregate sale prices of a number of real estate parcels more certainly equate with market value than does the individual sales price with individual market value."

This view was also expressed in the earlier case of *Ramsey* v. *Cty. Bd. of Revision of Franklin Cty.* (1943), 141 Ohio St. 366, 367-368, 25 O.O. 476, 48 N.E. 2d 102, 103, where this court stated:

"The price paid by the appellant is not a controlling factor in determining the assessed valuation of the property on the tax duplicate. While it is shown by the record that the sale was not a forced sale but one which was consummated after a general offering of the land to the public, this is but one of the factors to be considered. The valuation of these premises must necessarily bear some relation to valuations placed on similar properties in the same locality, and the fact that appellant's property had added value by reason of being a corner lot must also be given due consideration."

This principle that the price paid by the taxpayer is one factor, the best factor, but not the controlling factor, is repeated in *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13, 73 O.O. 2d 83, 336 N.E. 2d 433, a case which recites many of the other principles developed by this court through the years to guide in the valuation of real property for tax purposes. This court, in *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129, 4 O.O. 3d 309, 363 N.E. 2d 722, elevated the statement in *Park Investment* to syllabus law:

"1. The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction. (*State, ex rel. Park Investment Co.*, v. *Bd. of Tax Appeals*, 175 Ohio St. 410, approved and followed.)"

In the three cases this court heard that finally affirmed the determination of the BTA concerning the value of the *Conalco* facility, this court ultimately agreed with the BTA that, although an allocation of a lump sum purchase price in a recent arm's-length transaction was the best evidence of the true value of the property, where such allocation was not possible due to the complexities of the sale, a factual determination upon a review of conflicting evidence was reasonable. *Consolidated Aluminum Corp.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 410, 20 O.O. 3d 357, 423 N.E. 2d 75. Cf. *Tele-Media Co.* v. *Lindley* (1982), 70 Ohio St. 2d 284, 24 O.O. 3d 367, 436 N.E. 2d 1362.

With these cases in mind, we stated, in *Ratner I*, that we had never adopted an absolutist interpretation of R.C. 5713.03 which provides that the sale price of a parcel shall be considered by the auditor to be the true value where the parcel has been the subject of a recent arm's-length sale. We held that the sale price is the best evidence of the true value of the property, but this presumption may be rebutted by evidence which indicates otherwise. In *Ratner I*, we stated that consideration of independent appraisal evidence that tends to adjust the contract sale price to reflect both the price paid for real estate and the price paid for the favorable financing was required.

The legislature, knowing our historical rulings that the sale price is the best evidence of the true value of the property, but not the only evidence of its value, when it amended R.C. 5713.03 in Am. Sub. H.B. No. 920 (effective October 11, 1976) (136 Ohio Laws, Part II, 3247), would have used language more forceful than that the auditor shall "consider" the sale price to be the true value of the property, if it had wished to adopt another principle. "Consider" is defined in Webster's Third New International Dictionary, Unabridged (1986) 483, to mean:

"1: To reflect on: think about with a degree of care * * *

"2. to think of, regard, or treat in an attentive, solicitious, or kindly way * * * 4: to think of: come to view, judge, or classify * * * 6: to regard highly: RESPECT, ESTEEM * * * 7: to be of the opinion: suppose * * * 8: to give thought to with a view to purchasing, accepting, or adopting * * *'."

In light of our previous holdings, and this definition, it is incorrect to believe that the legislature would restrict the latitude of the BTA and deem the sale price of a property to be its true value in money. It would have been a simple matter for the legislature to use the phrase, "the sale price shall be the true value of the tract, lot or parcel which has been the subject of an arm's-length sale between a willing seller and a willing buyer within a reasonable length of time," rather than directing the auditor to regard highly that the sale price is the true value of the property. When viewed within the context of our rulings the language of the statute is recognition of our past decisions that the sale price is the best evidence but not the only evidence of true value.

Moreover, as noted in *Ratner I,* because the provisions of Section 2, Article XII of the Constitution require that taxation be uniform according to a property's value, any act of the legislature, which would deem a sale price to be the true value in money of a property without adjustment for below-market mortgage rates while a comparable property that was not sold with such terms receives a lower value, would not pass constitutional muster. Given our reluctance to declare a statute unconstitutional if it can be afforded a constitutional reading (*J.C. Penney Co.* v. *Limbach* [1986], 25 Ohio St. 3d 46, 25 OBR 71, 495 N.E. 2d 1), we choose to read R.C. 5713.03 to be in harmony with our past decisions.

The BTA was directed to reconsider this case under these standards. The BTA determined that the special financing established that "the contract sale price alone is not an accurate indication of true value. The contract sale price must be adjusted to reflect both the price paid for the property and the price paid for favorable financing." The BTA then determined that the fair market value of the property was $10,500,000.

Appellants argue that the decision of the BTA is unreasonable and unlawful because the BTA gave too much weight to the cash equivalency analysis, disregarded the appraisal which the appellants had submitted, and failed to consider all the evidence presented.

Our standard of review is found in the syllabus of *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52, 44 O.O. 2d 30, 239 N.E. 2d 25:

"The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful."

Essentially, appellants argue that the BTA gave more than full consideration to the financing evidence, giving such evidence maximum or total effect, to the improper disregard of appellants' evidence. Appellants argue that the BTA misinterpreted their appraisal witness' testimony, pointing to the board's misstatement that the value given by this witness corresponds exactly to the contract sale price of $12,530,000, when in fact the sale price was actually $12,540,500.

In *Ratner I,* we did not dictate to the board that it give total acceptance to the cash equivalency analysis, but

that it at least consider and review this evidence. The BTA, upon remand, observed that it was giving consideration to the totality of the evidence presented, including the four subordinated below-market mortgages. Its final conclusion indicates that it was impressed with the evidence of the favorable financing accompanying the transaction. The BTA does confuse the facts of the sale when it states that the purchase price was $12,530,000, but such confusion is not elevated to reversible error in light of the BTA's statement that it considered all the evidence, which included the appellants' independent appraisal evidence.

Appellants' appraisal witness admitted that the comparable sales contained in his report were not physically comparable to the property under review. He also did not include any equity factor in his capitalization rate, producing a low capitalization rate which translated into a value indication that approximated the contract sale price. Under cross-examination, he admitted that an investor would have had to pay $4,767,200 in cash to lose money in the investment and not get a return on his investment. He also admitted that it would be normal for an investor to expect a return on his investment and, when admittedly reasonable return rates were factored in, the capitalization rates produced market values even lower than the opinions of value rendered by the appraisals of the taxpayer. In fact, the last time this witness had not included a factor to reflect a return on the equity investment in the capitalization rate was when he personally purchased some property and had put no money down; in fact, he had hoped for appreciation of the property to provide him with a return. In consideration of this evidence, the BTA acted reasonably when it denied effect to the appellants' evidence.

Appellants have not shown that the decision of the BTA was unreasonable or unlawful, and it is hereby affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

LOCHER and DOUGLAS, JJ., dissent.

LOCHER, J., dissenting. I respectfully dissent. Today's decision once again disregards this court's holding in *Columbus Bd. of Edn.* v. *Fountain Square Assoc., Ltd.* (1984), 9 Ohio St. 3d 218, 9 OBR 528, 459 N.E. 2d 894, and places the finishing touch on the creation of a bureaucratic nightmare for the taxing authorities of this state.

In *Fountain Square, supra,* this court unanimously stated at 219, 9 OBR at 529, 459 N.E. 2d at 895:

"We have consistently adhered to the rule that '[t]he best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction. * * *' * * *

"Appraisals based upon factors other than sales price are appropriate for use in determining value only when no arm's-length sale has taken place * * *, or where it is shown that the sales price is not reflective of true value * * *.

"The fact that appellee obtained favorable financing does not render the sales price unrepresentative of true value."

In *Ratner I,* the majority attempted to distinguish *Fountain Square* because the taxpayer in that case "produced no evidence other than the terms of the sale to indicate that the sale price did not reflect the true value of the property." *Ratner* v. *Stark Cty. Bd. of Revision* (1986), 23 Ohio St.

3d 59, 61, 23 OBR 192, 193, 491 N.E. 2d 680, 682. However, the taxpayer *did* submit an appraisal which determined the value of the property by reducing the sale price to reflect the cash equivalency value of the notes, *i.e.,* the price for which the notes could have been sold on the date the property was purchased. See *Fountain Square, supra,* at 219, 9 OBR at 528-529, 459 N.E. 2d at 895. The cash equivalency analysis was utilized and considered in *Fountain Square* and this court soundly rejected it.

Regardless, as reflected in *Ratner I,* and now in the instant case, it appears that this court and the BTA will ignore *Fountain Square,* embrace the cash equivalency analysis and reject the objective, common-sense method of equating fair market value of real estate with its most recent arm's-length purchase price. As Justice Douglas so aptly noted in his dissent in *Ratner I:* "* * * I take umbrage with today's decision because of an even greater concern. * * * [C]ounty auditors, boards of revision and the BTA will be required to engage in an endless number of subjective adjustments in every sale of real property in order to determine the 'cash equivalency' of the sale price. Appraisers will be required, in every sale case, to value the notes and mortgages. Lost in the process would be the only objective criterion for determining market value—an actual sale. Replacing this objective criterion would be the subjective arguments of appraisers as to what value must be placed on the financing that went with the transaction." *Id.* at 64, 23 OBR at 196, 491 N.E. 2d at 684.

This loss of the only objective criterion for valuing real property will also open the veritable "floodgates" of litigation and increase uncertainty on this subject.

Finally, in *Ratner I,* the majority remanded the action and directed the BTA to "review evidence presented by independent real estate appraisers that adjusts the contract sale price to reflect both the price paid for real estate and the price paid for favorable financing." *Id.* at 62, 23 OBR at 194, 491 N.E. 2d at 682. It would appear from its decision in the instant case that the BTA misinterpreted this language to mean that it should adopt the taxpayer's evidence of value and hold in favor of the taxpayer. In fact, this is precisely what it did on remand. Thus, now that the BTA has reached the result the majority originally desired, the majority recognizes the well-established standard of review that it disregarded in *Ratner I:* "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52, 44 O.O. 2d 30, 239 N.E. 2d 25, syllabus. For Ohio's taxing authorities, this recognition comes far too late.

Accordingly, I respectfully dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.