BEREA CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE; MANLAW
INVESTMENT COMPANY, LTD., APPELLANT, v. CUYAHOGA COUNTY
BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty.
Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979.]

(No. 2003–2168—Submitted May 10, 2005—Decided October 5, 2005.)

O'DONNELL, J.

{¶ 1} The principal issue presented to this court concerns the proper method for determining the taxable value of a 10.719–acre parcel of property located at 17840 and 18000 Bagley Road in Middleburg Heights, a suburb of Cleveland, Ohio.

{¶ 2} The property at issue contains two buildings: one, constructed in 1968 or 1969, contains approximately 113,000 square feet and houses a Kmart store and an in-line store; the other, constructed in 1986, is a separately standing 3,454–square–foot Burger King restaurant.

{¶ 3} Further, the parcel is subject to two long-term leases. The first of these, entered into on August 9, 1967, between the original owner and the Kmart Corporation for an initial term ending in 1992, offered Kmart the option of extending the lease for three additional five-year periods to May 1, 2007. Kmart's annual base rent is $205,806, or $1.82 per square foot, plus an overage rent of one percent of the gross sales. The second, entered into on July 1, 1985, between Kmart and a Burger King franchisee, offers Burger King the option of extending the sublease for four additional five-year periods to June 20, 2025.

{¶ 4} The record here reflects and the parties agree that in March 1996, Manlaw Investment Company, Ltd. ("Manlaw") purchased the property, encumbered by the two leases, for $2,600,000. After the Cuyahoga County Auditor valued the property at the $2,600,000 sale price for tax year 1997, the Berea City School District Board of Education ("BOE") filed a complaint with the Cuyahoga County Board of Revision ("BOR") seeking to increase that valuation to $5,500,000 based on its contention that the existing leases on the property do not

reflect current economic rental potential because they were entered into in 1967 and 1985 respectively. In response, Manlaw filed a countercomplaint requesting the BOR to maintain the auditor's initial valuation based on the sale price of the property. After its review, the BOR increased the property valuation to $4,200,000, and both the BOE and Manlaw appealed that determination to the Board of Tax Appeals ("BTA").

{¶ 5} At a hearing before the BTA, Manlaw offered testimony from its appraiser, Robert J. Weiler, who valued the property at $2,130,000 based on the actual rent paid by Kmart; in contrast, the BOE presented its appraiser, Richard G. Racek, who valued the property at $4,800,000 using economic or market rent as the basis for his appraisal. Relying on *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, the BTA concluded that the property must be valued as a fee-simple estate unencumbered by the Kmart and Burger King leases. As a result, the BTA rejected Manlaw's actual-rent approach and valued the property at $4,800,000 based primarily on the BOE's calculation of the fair-market rental rate for comparable Cleveland-area properties.

{¶ 6} Manlaw then appealed to this court, asserting that the recent arm's-length sale between a willing seller and a willing buyer, i.e., the 1996 sale for $2,600,000, constituted the true value of the property. Further, it claimed that the BTA should not have relied on *Alliance Towers* and that the actual rent— rather than the economic rent—should be the proper indicator of the property's true value. Conversely, the BOE contends that a recent arm's-length sale is not conclusive evidence of the true value of the property, arguing that *Alliance Towers* demonstrates that the property should be valued as if it were unencumbered and further asserting that because the leases on the property do not reflect fair market value, the economic rent, rather than the actual rent, should be used to calculate the property's true value.

{¶ 7} We begin our analysis by reviewing R.C. 5713.03, which provides:

{¶ 8} "In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, *the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes.*" (Emphasis added.)

{¶ 9} In *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O.2d 432, 195 N.E.2d 908, we concluded: "The best method of determining value, when such information is available, is an actual sale of such property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so. This, without question, will

usually determine the monetary value of the property." (Citation omitted.) See, also, *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph one of the syllabus, in which this court held: "The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction."

{¶ 10} For more than 20 years, the law in this area had been well settled: a recent arm's-length sale of property evidenced its true value. However, in *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 61, 23 OBR 192, 491 N.E.2d 680 ("*Ratner I*"), this court changed that bright-line rule, concluding: "Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals evaluating the cash equivalency of the sale price is appropriate where it is shown that the sale price does not reflect the true value."

{¶ 11} In *Ratner I*, the property at issue, the Mellett Mall shopping center in Canton, Ohio, sold for $12,540,500. Payment consisted of $500,000 cash, a $6,000,000 note and assumption of $6,040,500 in debt. At the time, the Stark County Auditor valued the property at $15,899,710. Although the BTA adjusted the taxable value of the property to $12,530,000, the owner appealed, claiming that it had paid a considerably lesser cash consideration. This court reversed and held: "In determining true value for property, the board of revision and the BTA must at least consider and review evidence presented by independent real estate appraisers that adjusts the contract sale price to reflect both the price paid for real estate and the price paid for favorable financing." *Ratner I*, 23 Ohio St.3d at 62, 23 OBR 192, 491 N.E.2d 680.

{¶ 12} *Ratner I* and its follow-up case, *Ratner v. Stark Cty. Bd. of Revision* (1988), 35 Ohio St.3d 26, 517 N.E.2d 915 ("*Ratner II* "), disregard both the plain language of R.C. 5713.03 and this court's precedent of " 'consistently adher[ing] to the rule that "[t]he best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction." ' " *Ratner II*, 35 Ohio St.3d at 30, 517 N.E.2d 915 (Locher, J., dissenting), quoting *Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.* (1984), 9 Ohio St.3d 218, 219, 9 OBR 528, 459 N.E.2d 894, quoting *Conalco*, 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph one of the syllabus.

{¶ 13} In accordance with the plain language of R.C. 5713.03 and our decision in *Fountain Square*, today we overrule *Ratner I* and *Ratner II* to the extent that they direct the board of revision and the BTA to "consider and review evidence presented by independent real estate appraisers that adjusts the contract sale price to reflect both the price paid for real estate and the price paid for favorable financing," *Ratner I*, 23 Ohio St.3d at 62, 23 OBR 192, 491 N.E.2d 680, and hold that when the property has been the subject of a recent arm's-length sale

between a willing seller and a willing buyer, the sale price of the property shall be "the true value for taxation purposes." R.C. 5713.03. Accordingly, because the property at issue in this case had been recently sold in an arm's-length transaction for $2,600,000, the law requires that sale price to be the true value of that property for the tax year 1997.

{¶ 14} While we recognize that several of our decisions have permitted the BTA to consider market rental value of commercial real property as an indicator of the true value of the property, none of those cases involved a recent arm's-length sale of the property between a willing seller and a willing buyer. For instance, in *Wynwood Apts., Inc. v. Cuyahoga Cty. Bd. of Revision* (1979), 59 Ohio St.2d 34, 35, 13 O.O.3d 19, 391 N.E.2d 346, this court noted that "[t]here was no recent arm's-length transfer of the property to serve as 'best evidence' of the true value in money which the board must rely upon under R.C. 5717.03 and the case law of this court." See, also, *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826; and *Canton Towers, Ltd. v. Stark Cty. Bd. of Revision* (1983), 3 Ohio St.3d 4, 3 OBR 302, 444 N.E.2d 1027, each approving the use of "economic rental value of commercial real property as an indicium of value for *ad valorem* real property taxation purposes" where the property had not been sold in a recent arm's-length transaction between willing parties. *Alliance Towers*, 37 Ohio St.3d at 22, 523 N.E.2d 826.

{¶ 15} Consequently, *Wynwood Apts.* and similar cases addressing whether market rent or actual rent should be used in a property appraisal do not apply to situations in which the property has been recently sold in an arm's-length transaction. Indeed, as this court has often observed, "[a]ppraisals based upon factors other than sales price are appropriate for use in determining value *only* when no arm's-length sale has taken place, or where it is shown that the sales price is not reflective of the true value." (Emphasis added; citations omitted.) *Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.,* 9 Ohio St.3d at 219, 9 OBR 528, 459 N.E.2d 894. See, also, *N. Olmsted Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1990), 54 Ohio St.3d 98, 561 N.E.2d 915, in which we held that "[i]n the absence of evidence of a recent arm's-length sale between a willing buyer under no compulsion to buy and a willing seller under no compulsion to sell, the testimony of expert witnesses becomes necessary"; and *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 455, 459, 687 N.E.2d 426, in which we held that "when an actual sale is not available, 'an appraisal becomes necessary,'" quoting *Park Invest. Co.,* 175 Ohio St. at 412, 25 O.O.2d 432, 195 N.E.2d 908.

{¶ 16} Since the property at issue here had been sold in a recent arm's-length transaction, we do not need to determine whether actual rent or market rent should have been used in the property appraisal. Accordingly, the decision of the

BTA is reversed, and the matter is remanded to the BTA for further proceedings consistent with this opinion and our instruction that pursuant to R.C. 5713.03, the sale price in a recent arm's-length transaction between a willing seller and a willing buyer shall be considered the true value of the property for taxation purposes.

Decision reversed
and cause remanded.

RESNICK, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in judgment only.

---

**PFEIFER, J., concurring in judgment only.**

{¶ 17} "Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. (*Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.* (1984), 9 Ohio St.3d 218, 219 [9 OBR 528, 459 N.E.2d 894], construed.)" *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 23 OBR 192, 491 N.E.2d 680, syllabus.

{¶ 18} This standard has prevailed for almost 20 years. It is reasonable and should not be overturned lightly. *Ratner* confirmed that a recent sale is the best evidence of value. See R.C. 5713.03. That conclusion is reasonable, but it ought not to be etched in stone, because many factors can affect the price a buyer is willing to pay. See R.C. 5715.01. The second part of the *Ratner* standard sensibly recognizes this unremarkable fact by requiring an independent appraisal to establish a valuation different from a recent sales price.

{¶ 19} Quite simply, there is no reason to overturn *Ratner* or to embrace unnecessarily rigid rules to govern valuation. As I wrote in *Dublin–Sawmill Properties v. Franklin Cty. Bd. of Revision* (1993), 67 Ohio St.3d 575, 578, 621 N.E.2d 693 (Pfeifer, J., dissenting), "[b]lind reliance on purchase price to determine fair market value of real estate is simplistic and naïve." Further, strict adherence to the standard advanced in the majority opinion might invite the unscrupulous to attempt to lessen their tax burden with sham transactions.

{¶ 20} I am not unmindful of R.C. 5713.03, on which the majority opinion so heavily relies. That provision, however, is not the only one in the Revised Code that addresses real estate valuation. R.C. 5715.01 states, "The tax commissioner shall direct and supervise the assessment for taxation of all real property. The commission shall adopt, prescribe, and promulgate rules for the determination of true value and taxable value of real property * * *. * * * The rules shall

provide that in determining the true value of lands or improvements thereon for tax purposes, all facts and circumstances relating to the value of the property, its availability for the purposes for which it is constructed or being used, its obsolete character, if any, the income capacity of the property, if any, and any other factor that tends to prove its true value shall be used." The *Ratner* standard reasonably balances the rigid approach of R.C. 5713.03 with the more nuanced approach of R.C. 5715.01. *Ratner* should not be overruled.

{¶ 21} Despite my disagreement with the majority opinion, I concur in judgment because the recent sale provides the best evidence of true value in this case.

MOYER, C.J., concurs in the foregoing opinion.

---

Kadish, Hinkel & Weibel and Kevin M. Hinkel, for appellee Berea City School District Board of Education.

Siegel, Siegel, Johnson & Jennings Co., L.P.A., Fred Siegel, and Anita S. Johnson, for appellant.