**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, **Slip Opinion No. 2021-Ohio-2798.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2798

RANCHO CINCINNATI RIVERS, L.L.C., APPELLANT, *v.* WARREN COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, Slip Opinion No. 2021-Ohio-2798.]**

*Taxation—Real-property valuation—R.C. 5713.03's requirement that a property be valued "as if unencumbered" at the time of an appraisal means that the property must be valued as if it were free of an encumbrance such as a lease, not that the property is vacant at the time of transfer—Court of appeals' judgment affirmed.*

(No. 2020-0643—Submitted April 14, 2021—Decided August 18, 2021.)

APPEAL from the Court of Appeals for Warren County,

No. CA 2019-07-075, 2020-Ohio-1319.

_____

**DONNELLY, J.**

{¶ 1} Appellant, Rancho Cincinnati Rivers, L.L.C., owns and leases property in Warren County for use as a Lowe's Home Centers store. In this appeal, Rancho contests the tax valuation of that property for tax year 2016. Rancho maintains that an appraisal that had been introduced by appellee Kings Local School District Board of Education ("school board"), which was adopted by the Warren County Court of Common Pleas as the basis for determining the value of the property, was not competent evidence of the property's value, because it did not value the "fee simple, as if unencumbered," as required by R.C. 5713.03.

{¶ 2} Rancho contends that for a piece of property to be valued as a "fee simple estate, as if unencumbered" as required by R.C. 5713.03, the property must be appraised under the theory that a hypothetical sale of the property on the tax-lien date would involve the current tenant vacating the property at transfer. We disagree, and we therefore affirm the judgment of the Twelfth District Court of Appeals.

## I. BACKGROUND

### A. The property

{¶ 3} The property at issue is a 141,400 square-foot structure with a large parking lot, all of which sits on a parcel of land that is a little over 12 acres. Rancho acquired the property in 2011 for $5,130,000, subject to a 20-year ground lease pursuant to which Lowe's pays $375,000 per year.[1]

### B. Course of proceedings

{¶ 4} Appellee Warren County Auditor assessed the property as having a true value of $8,493,150 for the 2016 tax year. In March 2017, Rancho filed a complaint against the auditor's valuation; the school board filed a countercomplaint

---

1. A ground lease "grants [a lessee] the right to use and occupy the land." Appraisal Institute, *The Dictionary of Real Estate Appraisal* 106 (6th Ed.2015). "Improvements made by the ground lessee typically revert to the ground lessor at the end of the lease term." *Id*.

in April 2017 that asked appellee Warren County Board of Revision ("BOR") to retain the auditor's valuation. The BOR held a hearing at which Rancho presented the testimony and appraisal report of Richard G. Racek Jr., a member of the Appraisal Institute. Racek determined that the property had a value of $5,660,000 under the sales-comparison approach[2] and a value of $6,000,000 under the income-capitalization approach,[3] which he reconciled to an appraised value of $5,800,000. After discussing and rejecting Rancho's legal theory, the BOR decided to retain the auditor's valuation of the property.

{¶ 5} Pursuant to R.C. 5717.05, Rancho appealed the BOR's decision to the Warren County Court of Common Pleas. A magistrate conducted a hearing in April 2018, at which Rancho again relied on Racek's testimony and appraisal report. At the hearing, the school board presented the testimony and appraisal report of James W. Burt, also a member of the Appraisal Institute. Burt determined that the property had a value of $9,010,000 under the cost approach, a value of $8,480,000 under the sales-comparison approach, and a value of $8,570,000 under the income-capitalization approach, for a final-value conclusion of $8,480,000.

{¶ 6} Agreeing with Rancho's argument, the magistrate rejected the suggestion that "encumbered comparable properties may be used in a comparable sales approach, unadjusted, merely because the rent for such properties is at the market rate." Warren CP No. 17CV90441, 6 (Apr. 19, 2019). The magistrate reversed the BOR's decision and adopted Racek's valuation of $5,800,000.

---

2. The sales-comparison approach is defined as "[t]he process of deriving a value indication for the subject property by comparing sales of similar properties to the property being appraised, identifying appropriate units of comparison, and making adjustments to the sale prices (or unit prices, as appropriate) of the comparable properties based on relevant, market-derived elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant when an adequate supply of comparable sales is available." *The Dictionary of Real Estate Appraisal* at 207.

3. The income-capitalization approach is defined as a "[s]pecific appraisal technique[] applied to develop a value indication for a property based on its earning capability and calculated by the capitalization of property income." *The Dictionary of Real Estate Appraisal* at 115.

{¶ 7} The BOR and the auditor (collectively, "the county") filed objections to the magistrate's decision, as did the school board. The common pleas court sustained their objections and set the property's value at $8,480,000, in accordance with Burt's appraisal. Specifically, the court stated that by "valu[ing] the Property as if the first occupant of the structure had left and the property was sitting for sale, vacant," "treating the property as 'vacant' and 'second generation,' "[4] and "comparing the Property to other properties who have been on market for years but have yet to sell," Racek "provided an inaccurate valuation for the Property." C.P. No. 17CV090411, 14 (June 28, 2019). The common pleas court explained that Racek's approach was not proper, given that "the Property is currently leased to its first and only tenant, and all evidence indicates that lease agreement is fruitful." *Id*. The court found that because Burt (1) considered first-generation leases similar to Lowe's lease, (2) made qualitative adjustments based on the existence of the leases to which the comparable properties were subject, and (3) inquired into "whether the comparable properties were being leased at market value or if further adjustments were necessary," *id*. at 15, Burt's appraisal was both more reflective of precedent and more probative than Racek's. The court therefore adopted Burt's valuation of $8,480,000 as the property's value as of January 1, 2016.

{¶ 8} Rancho appealed, and the Twelfth District affirmed the judgment of the common pleas court. According to the court of appeals, Rancho "interprets R.C. 5713.03 to mean that an occupied property should be valued as if it were vacant and available for sale or rent to a future hypothetical user" and Rancho's "appraiser would value an occupied property, like the property in this case, as if it

---

4. A first-generation space is "[a] building or space designed to be functionally and economically efficient for the original tenant or a similar class of tenants over a period of time, during which the space retains its original utility and desirability." Appraisal Institute, *The Dictionary of Real Estate Appraisal* 92 (6th Ed.2015). A second-generation space is "[a] building or space used by a tenant other than the original tenant; often functionally obsolete before refurbishment but sometimes containing tenant improvements that can be used by a new tenant." *Id*. at 210.

were vacant on the tax lien date, rather than occupied and rented at market rent." 2020-Ohio-1319, ¶ 29. The court of appeals explained that the phrase " 'as if unencumbered' means that if the subject property is encumbered, the appraiser adjusts for the effects of those encumbrances. It does not mean, however, that the appraiser must assume that the property is vacant or ignore the fact that the property is leased at a market rate." *Id*., citing *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, 114 N.E.3d 192, ¶ 26-27.

{¶ 9} Based on this interpretation of precedent, the court of appeals affirmed the common pleas court's adoption of Burt's appraisal. Rancho appealed, and we accepted jurisdiction. *See* 159 Ohio St.3d 1464, 2020-Ohio-3882, 150 N.E.3d 117.

## II. ANALYSIS

### A. Standard of review

{¶ 10} The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities. *See NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, 87 N.E.3d 199, ¶ 13. When reviewing a board of revision's decision pursuant to R.C. 5717.05, a common pleas court may admit additional evidence, and it "should consider all such evidence and determine the taxable value through its independent judgment"—in other words, it should render a "*decision de novo*." (Emphasis sic.) *Black v. Cuyahoga Cty. Bd. of Revision*, 16 Ohio St.3d 11, 14, 475 N.E.2d 1264 (1985). And on appeal, the judgment of the common pleas court "shall not be disturbed absent a showing of abuse of discretion." *Id*. at paragraph one of the syllabus.

{¶ 11} However, R.C. 5717.05 provides that an appeal may be taken from a decision of a common pleas court "on the questions of law as in other cases." The issues that Rancho raises call for the construction and application of the language

of R.C. 5713.03—and that is a question of law which we review de novo. *See Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

### B. The statute at issue

{¶ 12} R.C. 5713.03 requires the county auditor, who is the assessor of real-property tax for the county, to "determine, as nearly as practicable, the true value of the fee simple estate, as if unencumbered but subject to any effects from the exercise of police powers or from other governmental actions, of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon." In carrying out this duty, "if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." *Id*.

{¶ 13} For purposes of this case, the crucial language of the statute is the phrase "fee simple estate, as if unencumbered." [5] That language was added to the statute by 2012 Am.Sub.H.B. No. 487 ("H.B. 487"), effective tax year 2013. *See Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 15, 18. Before H.B. 487 was enacted, the statute merely required that the auditor determine the value "of each separate tract, lot, or parcel of real property." 136 Ohio Laws, Part II, 3182, 3247. At that time, the statute made no explicit reference to a fee-simple estate.

---

5. "The appraisal profession defines 'fee simple' as '[a]bsolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.' " (Brackets added in *HIN, L.L.C.*) *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 22, *superseded by statute on other grounds*, quoting Appraisal Institute, *Appraisal of Real Estate* 114 (13th Ed.2008).

## C. Rancho's propositions of law

{¶ 14} Rancho presents four propositions of law that focus on two main issues.[6] Under the first, second, and fourth propositions of law presented in its merit brief, Rancho argues that Burt's appraisal is not competent evidence because it allegedly conflicts with the plain language of R.C. 5713.03, as amended in 2012 by H.B. 487. Rancho contends that R.C. 5713.03 requires the tax assessor to assume "an unencumbered transfer, wherein the hypothetical seller of the property vacates at closing and the buyer could take immediate possession and occupancy." Rancho asks this court to hold that "R.C. 5713.03 bars valuation of property assuming the presence of lease encumbrances, whether at market rates or otherwise." In other words, Rancho's interpretation of the statute requires us to adopt what we will refer to as the "vacant-at-transfer rule" for valuing real estate.

{¶ 15} Under the third proposition of law, Rancho contends that even apart from R.C. 5713.03, case law requires that "property-rights adjustments" to comparable properties that are subject to a lease must be made. Such an adjustment, Rancho argues, leads to a result that is similar to the vacant-at-transfer rule under R.C. 5713.03.

## D. The competing appraisals

{¶ 16} Rancho maintains that Burt's appraisal is not competent evidence of value because it is inconsistent with its vacant-at-transfer rule. Rancho's argument focuses most heavily on the sales-comparison analysis performed by the two

---

6. The four propositions of law set forth in Rancho's jurisdictional memorandum were reordered and rewritten in its merit brief. The school board asks this court to strike the fourth proposition of law in Rancho's merit brief because that proposition was not set forth in Rancho's jurisdictional memorandum. In most jurisdictional appeals, this court will strike a proposition of law that was not presented in a jurisdictional memorandum. *See Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 6 fn. 1. In this case, however, the substance of the fourth proposition of law in Rancho's merit brief is expressed in the argument under the second proposition of law in Rancho's jurisdictional memorandum—i.e., Rancho's theory that a "a property must be assessed assuming it transfers free from lease encumbrances as of the statutory date of value." For this reason, we decline to strike Rancho's fourth proposition of law.

appraisers: Racek adjusted downward the sales price of any comparable property that was subject to a lease because "a premium was considered to have been paid for the property rights conveyed." In contrast, Burt consulted with the parties to the sales that he used as comparables and determined that "the rent and lease terms were considered to be at market given the location, physical characteristics and market conditions." He then concluded that although certain market-related adjustments were necessary, the sale prices did not need any specific adjustment for the "property rights conveyed."

{¶ 17} Rancho maintains that its vacant-at-transfer rule requires the type of "property-rights-conveyed" adjustments that Racek made but that Burt rejected. The common pleas court rejected Rancho's argument, holding that "Burt's methodology of reviewing leased properties and making certain adjustments based upon the leases and whether they were at market value is not a defective method as a matter of law." C.P. No. 17CV090411 at 15 (June 28, 2019). The court of appeals affirmed that judgment, and we must now decide which appraiser's approach is the proper approach for purposes of future applications of R.C. 5713.03.

**E. The acquired meaning of the phrase "fee simple estate, as if unencumbered" is inconsistent with Rancho's vacant-at-transfer rule**

{¶ 18} Rancho argues that its vacant-at-transfer rule embodies the plain meaning of R.C. 5713.03. According to Rancho, "the only interpretation of 'as if unencumbered' that conforms to the General Assembly's plain language" is that the tax assessment must hypothesize a seller who "legally vacate[s] the premises to allow [the] buyer to occupy the property, lease the property, or take any lawful action related to the property that a lease encumbrance might prevent."

{¶ 19} The county asserts that R.C. 5713.03 does not explicitly state that the fee-simple estate must be valued as if it were vacant at the time of sale and transfer—it states that the property must be valued "as if unencumbered"—i.e., as if it were free of an encumbrance such as a lease.

8

{¶ 20} We agree with the county on this point.  Rancho's argument is not compelling because it does not involve the *express* terms of R.C. 5713.03, as amended by H.B. 487.  At best, Rancho's vacant-at-transfer rule gives only a possible interpretation of the statutory language.

{¶ 21} When interpreting and applying a statute, a court typically relies on "definitions provided by the legislative body" or, when a definition is not given in the statute, the "plain and ordinary meaning" of a term, which we ascertain by looking to the " 'particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Lingle v. State*, __ Ohio St.3d __, 2020-Ohio-6788, __ N.E.3d __, ¶ 15, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).  To discern the plain meaning of statutory text, we consult not only lexical sources such as dictionaries, but also the meaning that the words have acquired when they are used in case law.  *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-740, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981) (" ' "[w]here Congress uses terms that have accumulated settled meaning under * * * the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms" ' " [brackets and ellipsis added in *Community for Creative Non-Violence*]); *see also Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92 (because precedent stated that defamation is "an injury to the person," the definition of a "tort action," which includes the phrase "injury or loss to person," encompassed an action for defamation).

{¶ 22} Twenty-four years before the General Assembly inserted the phrase "fee simple estate, as if unencumbered" in R.C. 5713.03, this court used a nearly identical phrase in *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 523 N.E.2d 826 (1988), paragraph one of the syllabus ("For real property tax

purposes, the fee simple estate is to be valued as if it were unencumbered"). We formulated the *Alliance Towers* syllabus to address how real estate was to be valued in an appraisal, and in the syllabus, we cited to and relied on *Wynwood Apts., Inc. v. Cuyahoga Cty. Bd. of Revision*, 59 Ohio St.2d 34, 391 N.E.2d 346 (1979). In *Wynwood Apts.*, we held that the Board of Tax Appeals ("BTA") may, when valuing income-producing real estate, consider "economic rent"—i.e., the "rental warranted to be paid in the open real estate market based upon current rentals for comparable space," *id*. at 35—as well as "contract rent"—i.e., the actual rent designated in an existing lease, *id*. at 37-38.

{¶ 23} Accordingly, the *Alliance Towers* syllabus does not require that property be valued as if it were "vacant at transfer." Instead, the *Alliance Towers* syllabus requires that property be valued in light of the economic or market rent, which is calculated based on comparable properties in the market. This interpretation of the first paragraph of the syllabus in *Alliance Towers* is confirmed by the second paragraph of the syllabus: "An apartment property built and operated under the auspices of the Department of Housing and Urban Development is to be valued, for real property tax purposes, *with due regard for market rent* and current returns on mortgages and equities." (Emphasis added.)

{¶ 24} The conclusion that the phrase "fee simple estate, as if unencumbered" means valuing property in accordance with rent from a lease that is a typical lease in the market was confirmed in *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, *superseded by statute*. In *Berea*, a shopping center had been sold while it was encumbered by long-term leases. (We will refer to the sale of real estate that is subject to a lease when it is sold and transferred as a "leased-fee sale.") We confronted the issue whether the sale price from a leased-fee sale—or an appraisal based on valuing the leased fee—must be accepted as the value of the property. The BTA, citing *Alliance Towers*, rejected both the sale price and the appraisal that

had been introduced by the property owner and held that the *Alliance Towers* syllabus required the BTA to adopt a school board's appraisal because the school board's appraiser valued the property "using economic or market rent as the basis for his appraisal" rather than the actual rent paid under the existing lease. *Berea* at ¶ 5. We reversed the BTA's decision, holding that the rule of the *Alliance Towers* syllabus was not relevant in a case in which a recent arm's-length sale supplied the true value of the property. *Berea* at ¶ 14-15.

{¶ 25} Thus, under *Berea*, an arm's-length sale price was conclusive of a property's value, regardless of whether the sale involved an unencumbered property or a leased fee or whether the terms of any existing lease at the time of the sale were typical of the market. *See id.* at ¶ 13, quoting former R.C. 5713.03, Am.Sub.H.B. No. 920, 136 Ohio Laws, Part II, 3182, 3247 ("when [a] property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes' "). Indeed, this court's decision in *Berea* made clear that appraisal evidence was not competent to show the value of an encumbered property when a sale price from a recent arm's-length transaction was available. *See Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, *superseded by statute* ("At the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value"). But nothing in *Berea*'s discussion of *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826, indicated that the *Alliance Towers* syllabus required real estate to be valued as if the current occupant had vacated the property at the time of the transfer. Instead, *Alliance Towers* was understood to prefer the use of market rent to actual rent under an existing lease when valuing an encumbered piece of real estate, *see Berea* at ¶ 13-14—a principle *Berea* held to be inapplicable in the context of a recent arm's-length sale.

**{¶ 26}** In *Berea*, this court overruled two cases: *Ratner v. Stark Cty. Bd. of Revision*, 23 Ohio St.3d 59, 491 N.E.2d 680 (1986) ("*Ratner I*"), and *Ratner v. Stark Cty. Bd. of Revision*, 35 Ohio St.3d 26, 517 N.E.2d 915 (1988) ("*Ratner II*"). *See Berea* at ¶ 13. In doing so, we rejected the proposition from *Ratner I* and *II* that appraisal evidence could be considered when a property is sold in an arm's-length transaction. *Berea* at ¶ 13. But the reasoning of *Ratner I* and *II* is consistent with this court's decision in *Berea* regarding what is meant by a property being valued as a fee-simple estate, as if unencumbered.

**{¶ 27}** In *Ratner I*, this court adhered to the "best-evidence-of-value rule," i.e., that the best evidence of the value of real property is an actual, recent sale of the property in an arm's-length transaction. *See id.* at 60. At the same time, however, *Ratner I* opened the door to allowing a court to review independent appraisals evaluating the cash equivalency of the sale price to show that the sale price did not reflect the market value of the property. *Id.* at 60-61. Subsequently, in *Ratner II*, we affirmed the BTA's decision after the remand ordered in *Ratner I*: in the later decision, the board took appraisal evidence into account to determine the market value of the real estate at issue. *Ratner II* at 29-30. Neither *Ratner I* nor *Ratner II* indicated that the sale price of an encumbered property could not, on account of its being encumbered by a lease, be regarded as the presumptive best evidence of value. Nor did those cases suggest that property must be valued as if it were vacant at the time of transfer. *See Hilliard City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 53 Ohio St.3d 57, 558 N.E.2d 1170 (1990) (in a situation in which the owner of the property at issue presented no contrary appraisal evidence, the recent arm's-length sale price of the property, which had been subject to a lease that was set to take effect in the future, constituted the property's true value).

**{¶ 28}** In light of the syllabus in *Alliance Towers*, 37 Ohio St.3d 16, 523 N.E.2d 826, and the other cases preceding the enactment of H.B. 487, the phrase

"fee simple estate, as if unencumbered" had an acquired meaning when the General Assembly inserted that phrase into R.C. 5713.03. By using that phrase, the legislature codified its agreement with the requirement that property should be valued using market rent rather than the actual rent from an existing lease encumbering the property at the time of a sale and transfer.

**F. R.C. 5713.03 invokes a market-lease rule rather than a vacant-at-transfer rule**

{¶ 29} Our decisions applying amended R.C. 5713.03 already embody our conclusion that the phrase "fee simple estate, as if unencumbered" has an acquired meaning. In *Terraza*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, we were asked to decide (1) whether the sale price of a property that was subject to a lease at the time of a sale and transfer was the "best evidence" for purposes of acquiring the presumptive value of the property and (2) whether appraisal evidence was admissible to rebut the sale-price evidence for purposes of valuing the property. We answered yes to both questions. *Id*. at ¶ 27, 30, 31, 33.

{¶ 30} In making those determinations, we held that "the statutory amendment [to R.C. 5713.03] overrides *Berea* [106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782]," *Terraza* at ¶ 26, and that the amendment called for the application of the *Alliance Towers* syllabus, "regardless of whether the property at issue was the subject of a recent sale," *Terraza* at ¶ 27. However, we also held that while the leased-fee sale price constituted the best evidence of the value of the property and established the presumptive value of the property, that evidence was subject to rebuttal. *Id*. at ¶ 39.

{¶ 31} After *Terraza*, in *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-3855, 114 N.E.3d 162, ¶ 15, we held that by "making appraisal evidence generally admissible and competent, the statutory amendment[] return[s] the approach to valuing real property to what it was before *Berea*." More specifically, in *Westerville City Schools*, we noted that

by enacting H.B. 487, the legislature reinstated this court's holding in *Ratner I*, 23 Ohio St.3d 59, 491 N.E.2d 680—i.e., that "appraisal evidence is admissible and competent evidence of value even in cases in which a sale price has been offered as evidence of value," *Westerville City Schools* at ¶ 14.

{¶ 32} In sum, our case law establishes a "market-lease rule." The market-lease rule has two aspects. First, as we held in *Terraza*, the leased-fee sale price is the best evidence of the value of the property and establishes its presumptive value, subject to rebuttal. This first aspect of the market-lease rule strongly militates against Rancho's vacant-at-transfer rule: if property must be valued as if vacant at transfer, then it makes no sense to presume that a leased-fee sale price constitutes the property's value.

{¶ 33} Second, when property must be valued and there is no evidence of a recent arm's-length transaction, an appraisal that takes into account a lease with terms that are typical for the market may be considered and adopted. In *Harrah's*, 154 Ohio St.3d 340, 2018-Ohio-4370, 114 N.E.3d 192, a school board sought review of a decision of the BTA adopting a value for a property that was based on the owner's appraisal. The school board's appraiser valued the property "as if it were generating income under a hypothetical lease, under what [the appraiser] believe[d] would be current market rates." *Id.* at ¶ 26. While the BTA disregarded this appraisal because it constituted a "leased-fee valuation," *id.* at ¶ 26, we held that the BTA's refusal to consider the appraisal was legally erroneous, *id.* at ¶ 27. By so holding, we embraced the view that property may be valued in light of income generated by a hypothetical lease—as long as that hypothetical lease reflected current market rates.

{¶ 34} Despite our holding in *Harrah's* that a hypothetical leased-fee sale is competent evidence of value under R.C. 5713.03, Rancho insists on distinguishing properties that have already been leased—the sale of which would constitute "leased-fee sales"—from those properties that are "available to be

leased." As Rancho puts it, "One who acquires a property encumbered by a lease at the time of sale cannot realize the value of the property by encumbering it with a lease because the property is already encumbered." But the appraisal at issue in *Harrah's* was rejected by the BTA precisely because it was a "leased fee valuation"—and by reversing the BTA's decision, we implicitly rejected Rancho's distinction between proposed and existing leases. *Harrah's* at ¶ 26-27.

{¶ 35} Under the market-lease rule, the property-rights adjustments that Racek made, along with other aspects of his appraisal, are neither statutorily required nor forbidden. The selection of comparable sales and adjustments made to the sale prices by an expert appraiser, so long as the sales and the adjustments relate to the market for the property at issue, are legally permissible. The BTA or a common pleas court, as the fact-finders, must decide how much weight to accord competing appraisals. *See Black*, 16 Ohio St.3d at 14, 475 N.E.2d 1264 (requiring the common pleas court to exercise independent judgment when considering evidence and determining value); *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9 ("the BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it"). In this case, the common pleas court, as the trier of fact, acted within its discretion in determining that Burt's appraisal better estimated the property's value.

{¶ 36} Because we hold that the market-lease rule reflects the acquired meaning of the phrase "fee simple estate, as if unencumbered," we reject the first, second, and fourth propositions of law advanced in Rancho's merit brief.

### G. The case law requiring adjustments of leased-fee comparables does not support Rancho's vacant-at-transfer rule

{¶ 37} Under its third proposition of law, Rancho claims that this court has held in other cases dealing with the valuation of property that "property rights adjustments to leased comparables must be made." As we have just discussed, R.C.

5713.03 does not as a matter of law require adjustments to leased-fee sales used as sales comparables; instead, adjustments should be made based on the appraiser's expert analysis of the market for the property. Contrary to Rancho's argument, precedent does not impose a fixed legal requirement of a property-rights adjustment any more than R.C. 5713.03 does.

{¶ 38} The cases that Rancho cites in support of its argument are *Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266 ("*Lowe's I*"), and *Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, 116 N.E.3d 79 ("*Lowe's II*"). Close inspection of those cases, however, shows that they do not support Rancho's argument that an appraiser must as a matter of law make the kind of property-rights adjustments that Racek made. In each of those cases, our holding is predicated on our rejection of a specific doctrine that the BTA articulated in *Target Corp. v. Lake Cty. Bd. of Revision*, BTA No. 2008-M-1088, 2011 WL 6917517 (Dec. 20, 2011).

{¶ 39} In its *Target* decision, the BTA applied what could be called the "unadjusted-sale-price argument." That argument depended on our holding in *Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782. As discussed earlier in this opinion, *Berea* held that an arm's-length sale price from a leased-fee sale conclusively established the value of a property. Based on *Berea*, we have repeatedly rejected the argument that sale prices should be adjusted because of the economics of leases that encumbered the property at the time of sale. *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, *superseded by statute* (the elevated sale price of a property, which was attributable to above-market lease payments resulting from an earlier sale-leaseback transaction, was not required to be adjusted); *Rhodes v.*

*Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236 (pursuant to an arm's-length agreement between a willing seller and a willing buyer, the sale price of a building in which a lessee operated a drugstore pursuant to a long-term lease constituted the "exchange value" of the property, as opposed to the value-in-use of the property, and thus reflected the property's true value for taxation purposes); *HIN, L.L.C.*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, at ¶ 13-14, 20.

{¶ 40} In *Target*, the BTA reasoned that because *Berea* prohibited the adjustment of the leased-fee sale price of commercial real estate, leased-fee sale prices used as comparables to value an owner-occupied commercial property also must not be adjusted. 2011 WL 6917517 at *3. In the cases that Rancho cites in support of its third proposition of law, we rejected that reasoning as illogical, holding instead that to the extent that the absence of an encumbrance on the property at issue would lead to a higher or lower sale price, the comparables must be adjusted to reflect that fact. *See Steak 'n Shake* at ¶ 35-36; *Rite Aid* at ¶ 20; *Lowe's I* at ¶ 17-18.

{¶ 41} In this context, Rancho relies most heavily on *Lowe's II*, 154 Ohio St.3d 463, 2018-Ohio-1974, 116 N.E.3d 79, which addressed the 2013 tax year and therefore applied amended R.C. 5713.03. In *Lowe's II*, we vacated and remanded the case to the BTA because at the time of the BTA's original decision, *Steak 'n Shake* had just been decided and *Rite Aid* and *Lowe's I* had not yet been decided. *Lowe's II* at ¶ 2. Rancho emphasizes our statement in *Lowe's II* that "it is plain that a lease is an encumbrance and that R.C. 5713.03's directive to value the realty 'as if unencumbered' means to value the realty as if it were free of encumbrances such as leases." *Id.* at ¶ 19. Rancho construes this passage as support for its argument that as a matter of law, "lease encumbered comparables must be adjusted to remove the effect of the lease."

SUPREME COURT OF OHIO

{¶ 42} We disagree. *Lowe's II* explicitly identifies, as the reason for returning the case to the BTA, the danger that the BTA adopted the "unadjusted sale-price argument" that the BTA had embraced in its *Target* decision, *Lowe's II* at ¶ 29. Thus, *Lowe's II* does not support Rancho's argument that the law requires an appraiser to make a property-rights adjustment nor does the case more generally support the vacant-at-transfer rule.

### III. CONCLUSION

{¶ 43} For the foregoing reasons, we affirm the judgment of the Twelfth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and BRUNNER, JJ., concur.

STEWART, J., concurs in judgment only.

_____

The Gibbs Firm, L.P.A., Ryan J. Gibbs, and Geoffrey N. Byrne, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Christopher A. Watkins, Assistant Prosecuting Attorney, for appellees Warren County Board of Revision and Warren County Auditor.

David C. DiMuzio, Inc., David C. DiMuzio, and Mathew C. DiMuzio, for appellee Kings Local School District, Board of Education.

_____